The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

Anthony Benny MARTINEZ,
Defendant-Appellant.

No. 79CA1097.

Colorado Court of Appeals,
Div. I.

Oct. 29, 1981.

Rehearing Denied Nov. 27, 1981.

Certiorari Denied Sept. 13, 1982.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sp. Asst. Atty. Gen., Gerard Boyle, Asst. Atty. Gen., Denver, for plaintiff-appellee.

J. Gregory Walta, Colorado State Public Defender, Jody Sorenson Theis, Deputy State Public Defender, Denver, for defendant-appellant.

KIRSHBAUM, Judge.

Defendant appeals his conviction by a jury of two counts of first-degree sexual assault and two counts of crime of violence. We affirm.

The charges against defendant arose from two incidents in and near Colorado Springs involving two different women. Identification was the primary issue at trial.

The first victim testified that on April 10, 1979, she was sexually assaulted at knifepoint in a Chevrolet Impala by a man whom she had met several hours before at a bar. The second victim testified that on April 25, 1979, a man picked her up while she was hitchhiking, threatened her with an icepick, and sexually assaulted her in his automobile. Each victim described her assailant to the police as a Mexican or Italian, with short hair parted in the middle, a goatee, and no foreign accent; stated that her assailant's automobile had California license plates, bench seats, and a black plastic cupholder on the floor of the front seat; and commented that her assailant had indicated that he had been employed as a counselor and was from California. Police investigators later discovered a knife, an icepick, and a black plastic cupholder in defendant's Chevrolet Impala.

Defendant raised alibi as his defense, claiming that at the time the assaults occurred he was with family and friends. Defendant's case included evidence that he was viewing a particular television program, *Barnaby Jones,* at the time the April 10, 1979, assault occurred. Defendant testified that he was discharged from the army in March 1979; that he had worked thereafter for several weeks as a mental health worker at a hospital; that he was a Mexi-

can-American from California; that his hair had a natural part in the middle; and that he began growing a goatee shortly after he left the army. The prosecution introduced evidence to rebut the alibi defense.

## I. SEVERANCE

Defendant contends that the trial court erred in denying his motion for separate trials of the two sexual assaults charged in the information. We disagree.

Crim.P. 14 provides, in pertinent part: "If it appears that a defendant ... is prejudiced by a joinder of offenses ... the court may order an election or separate trials of counts ...."

A ruling on a motion to sever counts is within the sound discretion of the trial court and will not be disturbed on appeal unless an abuse of that discretion has been shown. *People v. Pickett,* 194 Colo. 178, 571 P.2d 1078 (1977). Here, the record supports the trial court's conclusion that evidence of each transaction would have been admissible in separate trials under § 16–10–301, C.R.S.1973 (1978 Repl.Vol. 8), to show identity, and that, therefore, no undue prejudice would result from the single trial of both offenses. *See Pigford v. People,* 197 Colo. 358, 593 P.2d 354 (1979); *People v. Allen,* 42 Colo.App. 345, 599 P.2d 264 (1979). Thus, we find no abuse of discretion.

## II. JURY CONDUCT

Defendant next argues that the trial court erred in permitting the jury to commence note-taking after the trial had begun. We disagree.

Near the close of the People's case, a member of the jury asked the trial court if the jurors could begin taking notes. The court granted this request, over the objections of both sides, but instructed the jury that there was no requirement that they take notes. The trial court warned the jurors not to become so involved in note-taking that they might miss the demeanor of witnesses; cautioned them not to place undue reliance upon their notes during deliberations; and advised them that, if necessary, any testimony could be reconstructed *verbatim* for them by the court reporter.

■ The question of whether jurors may take notes during a trial is one entrusted to the discretion of the trial court. *Billings v. People,* 171 Colo. 236, 466 P.2d 474 (1970). Under proper instructions, jurors have been allowed to commence note-taking at the beginning of trial. *Loggins v. People,* 178 Colo. 439, 498 P.2d 1146 (1972). The conduct of the trial and the responsibility for ensuring that a particular jury is able to perform its role adequately is the responsibility of the trial court. The fact that both counsel objected to the juror's request, although a factor for consideration, does not, in our opinion, alter the trial court's primary responsibility to weigh all the circumstances of the particular case before exercising its discretion by granting or denying a juror's request to permit note-taking.

■ Here, the trial was lengthy, many witnesses were called, two separate criminal incidents were involved, and the trial court carefully cautioned the jurors about unwarranted attention to note-taking and to the use of their notes. We conclude that, under all the circumstances of this case, the trial court did not abuse its discretion by permitting the taking of notes. *See United States v. Johnson,* 584 F.2d 148 (6th Cir. 1978), *cert. denied,* 440 U.S. 918, 99 S.Ct. 1240, 59 L.Ed.2d 469 (1979); *A. B. A., Standards Relating to Trial by Jury* § 4.2 (1972).

### III. COMMENTS BY POLICE INVESTIGATOR

Defendant next contends that the trial court erroneously overruled two motions for mistrial raised by defendant in connection with certain testimony given by detective Frank Finn, a prosecution witness. We disagree.

During the prosecution's case-in-chief, Finn testified about the investigation conducted by police officials. While explaining the value of the investigatory work, he stated that his investigation "pointed toward one person that I can see." During the prosecution's rebuttal case, Finn stated that he had tried to talk to defendant during his investigation of the incident. Defendant objected to the two statements and, on each occasion, unsuccessfully requested the trial court to declare a mistrial.

■ The context in which challenged trial testimony is presented must be examined to determine whether a defendant's constitutional rights were denied by evidentiary rulings. For example, not every reference by a prosecution witness to a defendant's exercise of his right to remain silent is error that requires reversal. *People v. Key,* 185 Colo. 72, 522 P.2d 719 (1974). The determining factor is whether the defendant's silence was used by the prosecution as a means of creating an inference of guilt or whether the prosecution argued that such silence constituted an implied admission of guilt. *People v. Cornelison,* Colo.App., 616 P.2d 173 (1980).

■ Here, the trial court determined that in the context in which they were uttered Finn's two statements did not constitute a personal opinion of guilt and were not designed to create an inference of guilt. Finn's testimony was prompted by the theory articulated by defendant in his opening remarks, made prior to the commencement of the prosecution's case, that the police investigation of the incident had been inadequate. Defendant pursued this theory throughout the trial and in his closing argument. We conclude, upon review of the record, that in this context the trial court did not abuse its discretion in denying defendant's mistrial motions. *People v. Saars,* 196 Colo. 294, 584 P.2d 622 (1978).

### IV. IDENTIFICATION TESTIMONY

Defendant next contends that the in-court identification of him by the first victim was the product of an impermissibly suggestive out-of-court photographic line-up which tainted the in-court identification. We disagree.

Some three and one-half weeks after the April 10, 1978, incident, detective Finn showed the first victim an array of six photos. The victim initially did not identify her assailant among those photos. Finn asked her if she was sure, to which she responded in the affirmative, and he asked her to look again. She then picked out the photograph of defendant commenting that

it was a bad picture because his hair was disheveled in the photo and because she remembered his face as "skinnier."

We agree with the trial court's conclusion that the photographs themselves were not suggestive and that Finn's request that she study the photos carefully did not amount to unduly suggestive tactics. *See People v. District Court,* Colo., 607 P.2d 989 (1980); *People v. Gordon,* Colo.App., 615 P.2d 62 (1980). Furthermore, the record supports the trial court's conclusion that the in-court identification of defendant by the first victim was permissible because her three-hour ordeal provided an independent basis for such identification. *See People v. Renfrow,* 193 Colo. 131, 564 P.2d 411 (1977).

Defendant also asserts that the first victim's identification testimony was tainted because she observed him seated alone at the defense table prior to the commencement of the suppression hearing conducted the day before the trial began. The victim testified *in camera* that she had not expected defendant to be present in the courtroom; that she was in the courtroom for only a couple of seconds; that she immediately recognized defendant; and that no one directed her attention toward him. Under these circumstances, this inadvertent confrontation was neither impermissible nor suggestive. Further, as previously noted, the victim's in-court identification of defendant was based on her observation of him during the sexual assault and, thus, was supported by an independent source. *See People v. Renfrow, supra.*

## V. COMMENTS OF COURT TO JURY

Defendant next argues that the trial court erroneously influenced the jury's consideration of certain rebuttal evidence offered by the prosecution. We disagree.

While excusing the jury for a noon recess during the prosecution's rebuttal case, the trial court advised the jury as follows:

"I would request one other thing during the lunch hour recess. It is anticipated that we are going to watch two different episodes of *Barnaby Jones* this afternoon, and they are one-half hour length apiece. The Courtroom will be dark during the watching, so that you can see it better. We unfortunately have had some experience, especially of Jurors coming back after lunch, and the Courtroom is dark, and they fall asleep. I know that it happens. So, I would ask specifically that the Jurors attempt to anticipate this problem and eat a light lunch, and do what needs to be done—drink coffee, or whatever, needs to be done in anticipation of any difficulty staying awake during this afternoon's proceedings. It is of significance, and I mention it to you for that reason. So, with that additional advisement to you you will be excused."

Defense counsel subsequently requested a mistrial on the ground that the court's language described the forthcoming rebuttal evidence as being "of significance."

A trial judge must remain free of all taint of bias and partiality, *People v. District Court,* 192 Colo. 503, 560 P.2d 828 (1977), and should not indicate to the jury any personal opinion that certain testimony is worthy or unworthy of belief. *See A. B. A., Standards Relating to the Function of the Trial Judge* § 5.6(a) (1972). The trial court's comment here was ambiguous respecting the evidence to come. Considering the context of the statement and the repeated references to the television program by defense witnesses, we conclude that the comment, though less circumspect than it might have been, did not impart any personal opinion of the trial court to the jury respecting the testimony to come. *See People v. Garcia,* 186 Colo. 167, 526 P.2d 292 (1974); *People v. Anderson,* 184 Colo. 32, 518 P.2d 828 (1974).

## VI. JURY INSTRUCTIONS

Defendant next contends that the trial court erroneously denied jury instructions tendered by him on his theory of the case and on identification. We disagree.

While it is true that a defendant generally is entitled to an instruction on his theory of defense, it is not error to refuse to give a tendered theory of the case instruction which merely re-states points covered by other instructions, reiterates a general denial of guilt, and contains argumentative

matter. *People v. Holmes,* 191 Colo. 477, 553 P.2d 786 (1976); *People v. Akins,* 36 Colo.App. 337, 541 P.2d 338 (1975).

■ Defendant's tendered special instruction on identification was based upon an instruction approved in *United States v. Telfaire,* 469 F.2d 552 (D.C.Cir.1972). In *People v. Reynolds,* 38 Colo.App. 258, 559 P.2d 714 (1976), this court held that a trial court need not give a *Telfaire*-type instruction if a general instruction on credibility of witnesses is given. Here, the trial court submitted a general instruction on credibility and an instruction on burden of proof beyond a reasonable doubt as to all elements of the crimes charged. Thus, no error was committed. *See People v. Palumbo,* 192 Colo. 7, 555 P.2d 521 (1976).

## VII. CLOSING ARGUMENT

■ Defendant contends that certain comments by the prosecuting attorney to the jury improperly diminished the State's burden of proof and shifted the burden to the defense. We disagree.

During closing argument, the prosecution stated:

"The burden is a reasonable doubt. It is not a mathematical certainty, and it is not beyond any shadow of a doubt.

. . . .

It is my duty to produce evidence. When the Defense chose to go forward, they had access to the same records that I did, and if they have run into anything that showed that another person besides Anthony Martinez did these crimes, why didn't they produce it? Why didn't they produce it?"

In his closing argument, defense counsel referred repeatedly to the State's failure to investigate other suspects. In an effort to rebut such statements and their inferential implications, the prosecutor pointed out that defendant could have investigated such suspects if he thought they would have exculpated him. The prosecutor also stated that it was his duty to prove guilt beyond a reasonable doubt, and the trial court properly instructed the jury on reasonable doubt. Under these circumstances, the

State's burden was neither diminished nor shifted. *People v. Medina,* 190 Colo. 225, 545 P.2d 702 (1976); *People v. Marioneaux,* Colo.App., 618 P.2d 678 (1980).

## VIII. MISCELLANEOUS ISSUES

■ We have reviewed defendant's final contentions that the trial court abused its discretion in permitting the prosecution to endorse a rebuttal witness on the day of trial while denying defendant's motion for continuance and that the alleged errors in combination constitute a denial of due process of law. Such contentions are without merit. *People v. Estep,* 196 Colo. 340, 583 P.2d 927 (1978), *cert. denied,* 440 U.S. 983, 99 S.Ct. 1796, 60 L.Ed.2d 245 (1979); *People v. Sepeda,* 196 Colo. 13, 581 P.2d 723 (1978).

Judgment affirmed.

COYTE and STERNBERG, JJ., concur.