The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Thomas ROGERS, Defendant–Appellant.

No. 88CA0920.

Colorado Court of Appeals,
Div. I.

April 5, 1990.
Rehearing Denied May 31, 1990.
Certiorari Denied Dec. 10, 1990.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo.Const., art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).

**1328**

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and Robert M. Russel, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, and Thomas M. Van Cleave, III, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge PIERCE.

The defendant, Thomas Rogers, appeals a judgment of conviction entered on a jury verdict finding him guilty of sexual assault on a child. We reverse and remand.

### I.

What we perceive to be the defendant's principal contention of error is that the trial court erred in personally escorting the child victim to and from the witness stand. He argues that the trial court's action deprived him of a fair trial by improperly bolstering the child's credibility. We agree that these actions constituted error.

As a preliminary matter we point out that, before any evidence was received, the following colloquy between defense counsel and the court occurred:

"COUNSEL: Now, Your Honor, at some point today, the People are going to call the child and I understand the Court has special procedures for the child, although I've never been here for them. I understand the child sits in a special seat and that we will question while sitting down, and that ordinarily it's your custom to escort the child personally to her chair?

"THE COURT: Well, usually I meet the child when she's coming through the gate and bring her over and have her sit down, do the swearing—well, such as it is—there, and then I have a staff person sit next to her, who used to have a microphone. I don't know if we have a microphone that will reach anymore, just in case the child's voice doesn't carry, and a glass of water, whatever.

"COUNSEL: Sure. Could you have one of your staff people rather than you walk her to the chair? Would the court consider this?

"THE COURT: No."

A trial court may not express to a jury any personal opinion of the credibility of testimony. *People v. Martinez*, 652 P.2d 174 (Colo.App.1981). It is particularly important in a case such as this, in which the credibility of a child witness is the crucial issue, that the judge avoid any statement or action that could be construed by a juror as an endorsement of the child's credibility.

Although child witnesses must be protected against undue embarrassment, trial courts should scrupulously avoid taking actions that might give an appearance of partiality. *See LaChappelle v. Moran*, 699 F.2d 560 (1st Cir.1983). The court must be free of even the appearance of bias and partiality. *See People v. Hrapski*, 718 P.2d 1050 (Colo.1986); *People v. District Court*, 192 Colo. 503, 560 P.2d 828 (Colo.1977).

Just as a trial court's statement may be an improper comment on credibility, *see State v. Suttles*, 767 S.W.2d 403 (Tenn.1989) (a trial court's actions towards a child victim may constitute an improper comment on the child's credibility); *State v. Cook*, 485 So.2d 606 (La.App.1986) (rewarding child victim with candy in presence of jury after conclusion of testimony was reversible error).

■ Based on these considerations, we believe that the jury in this case could have perceived the trial court's action as an endorsement of the child's credibility, thus impinging upon the defendant's right to a fair trial. *See People v. Martinez, supra.*

We do not question the appropriateness of the motivation of the trial judge here, or the desirability of the effect which she hoped to achieve. However, there are alternatives that can facilitate the testimony of child witnesses and at the same time minimize the adverse effects upon the child without leaving open the possibility of misinterpretation by the jurors of the judge's actions. A victim witness advocate, a specially trained member of the court staff, or the prosecutor could escort the child to the witness stand in order to make the witness more comfortable. Other neutral means of making a child more at ease in testifying have been suggested. *See* Garnett, *Children as Witnesses: Competency and Rules Favoring Their Testimony*, 12 Colo. Law 1982 (December 1983); Ginkowski, *The Abused Child: The Prosecutor's Terrifying Nightmare*, 1 Criminal Justice 30 (Spring 1986); Whitcomb, *Child Victims in Court: The Limits of Innovation*, 70 Judicature 90 (1986); ABA, *Guidelines for the Fair Treatment of Child Witnesses in Cases Where Child Abuse is Alleged*, Guideline 3(b)-(g) (1985). We cannot, however, condone this deviation by the trial judge from role as arbiter in the case.

It is argued that an instruction submitted to the jury cured the probable effect of the procedure used here upon the outcome of the trial. We do not agree.

■ Following the discussion between defense counsel and the court concerning the court's practice of escorting child witnesses to the witness stand, defense counsel submitted an instruction, for the purpose of informing the jury that the court was not "adopting the child as your favorite witness." The district attorney had no objection to the tendered instruction. We do not construe the offer of this instruction to be a waiver of the rights of the defendant or any agreement to approve the actions of the trial court. Counsel for defen-

dant was only trying to counteract, as best he could, whatever harm might result from the actions of the court.

■ The court was indefinite at that time whether it would give the instruction. However, just before the child testified, in referring to its actions toward the child, the court did instruct the jury that:

"by doing these things I'm not implying, nor are you to understand that I am implying, any opinion as to [the victim's] credibility or any weight to be given to her testimony. You're to apply the same standards judging her credibility that you would to any other witness. I merely do these things to try to make testimony for younger children easier."

Neither this instruction, nor any other, professing impartiality can "unring the bell" of prejudice to the defendant and partiality to the witness that the very open and dramatic act of the court creates. *See Wilson v. People*, 743 P.2d 415 (Colo.1987). We reject the actions of the trial judge in this case as improper and rule that her actions warrant the granting of a new trial for this defendant.

II.

Because there are other issues that may reoccur upon retrial, we answer two other alleged errors raised by the defendant. The first concerns his assertion that the trial court erred in admitting the victim's hearsay statements describing the sexual assault. We disagree.

■ Under § 13–25–129, C.R.S. (1987 Repl.Vol. 6A), a child's out-of-court statement describing a sexual assault is admissible if the court finds "that the time, content, and circumstances of the statement provide sufficient safeguards of reliability," and if, as occurred here, the child testifies at trial. We agree with the trial court that there were sufficient safeguards of reliability.

The victim made the statements on the first and second day after the assault, when her memory was still fresh. The statements to the three witnesses, her mother, a police detective, and a doctor,

were consistent in the description of the assault, and the victim used language appropriate to a child of her age.

Although the victim's mother raised the subject of sexual contact generally, the victim brought up defendant's assault in response to an open-ended question that did not suggest the answer. The detective and doctor each interviewed the child outside the mother's presence, precluding the child from merely repeating her mother's statements. The witnesses avoided the use of leading questions to the extent possible. In addition, there was some physical evidence consistent with the child's statements. Under these circumstances, the record supports the trial court's conclusion that there were sufficient safeguards of reliability. *See People v. District Court,* 776 P.2d 1083 (Colo.1989); *People v. Serna,* 738 P.2d 802 (Colo.App.1987).

■ The defendant's final contention is that the trial court erred in permitting a detective to testify about the range of responses and demeanor demonstrated by child sexual assault victims. He argues that the testimony was not helpful to the jury as required by CRE 701. We disagree.

The victim did not report the assault immediately, and was calm and matter-of-fact when she did report it. Defense counsel suggested through cross-examination that this was not what would be expected from a sexual assault victim. The detective testified that in his experience, child sexual assault victims usually do not report the assault immediately, and that their emotional state when describing assaults may range from calm and matter-of-fact to extremely upset.

Such testimony was relevant and helpful to the jury in assessing the victim's testimony and statements. We conclude that the trial court did not err by admitting it. *See Farley v. People,* 746 P.2d 956 (Colo. 1987); *People v. Gallegos,* 644 P.2d 920 (Colo.1982).

The judgment is reversed, and the cause is remanded for a new trial.

SMITH, J., concurs.

STERNBERG, J., dissents.

Judge STERNBERG dissenting.

While I do not agree with the majority that this conviction should be reversed, I join them in their conclusion that the actions of the trial judge in escorting the child witness to and from the witness stand constituted error. In that regard, there is just no good reason for a court to spread its robe of credibility over *any* witness, even a six-year-old child. There are trained witness advocates who are paid to do just what the judge did here.

Having said that, however, I cannot join in reversing the verdict of this jury. In my view, the instruction the court gave the jury concerning its actions cured the error. Just before the child testified, in referring to its actions in escorting the child to and from the stand, the court instructed that:

"by doing these things I'm not implying, nor are you to understand that I am implying, any opinion as to [the victim's] credibility or any weight to be given to her testimony. You're to apply the same standards judging her credibility that you would to any other witness. I merely do these things to try to make testimony for younger children easier."

In our zeal to stop an unfortunate and erroneous practice of a trial court, we should not overreact and in effect, hold that the jurors would be so hypnotized by the court's one importunate act that they would ignore this instruction and construe the trial court's action as an endorsement of the child's credibility. A fundamental principle of appellate law is that, absent a showing to the contrary, a jury is presumed to follow a trial court's instructions. *See People v. Moody,* 676 P.2d 691 (Colo. 1984). That principle should be invoked here.

Because of the court's instruction, I refuse to believe that one "rung bell" inevitably induced a Pavlovian response of prejudice in the minds of the jury. Thus, I would rule that the trial court erred, but that the error was rendered harmless by the trial court's instruction to the jury ex-

plaining its actions in escorting the child to and from the stand. Therefore, I would affirm the judgment of conviction entered on the jury verdict.