The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Royce Carsey GIBSON, Defendant–Appellant.

No. 06CA0796.

Colorado Court of Appeals, Div. II.

Aug. 21, 2008.

Rehearing Denied Nov. 6, 2008.

John W. Suthers, Attorney General, Cheryl Hone Canaday, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Alan Kratz, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge BERNARD.

Defendant, Royce Carsey Gibson, appeals the judgment of conviction entered on a jury verdict finding him guilty of one count of class five felony attempted second degree burglary and one count of misdemeanor criminal mischief. We affirm.

## I. Background

On January 15, 2004, at about 10:00 p.m., the owner of a closed Lakewood store was in the back room making a telephone call. He heard loud banging noises from the front door, and saw two men there. He noticed they were African–American, less than six

feet tall, but one was several inches taller than the other. Both men wore padded winter coats and one wore a multi-colored, horizontally-striped knit cap. The owner yelled at the men, who ran south down Wadsworth Avenue toward Mississippi Avenue.

The owner immediately called the police, and a Lakewood police officer arrived within a minute. The owner showed the officer the doorjamb, which had been damaged during the attempted break-in, and the officer left to search for the perpetrators. As the officer drove out of the parking lot, an unidentified bystander flagged him down and told him he had seen two African–American men running westbound on Mississippi Avenue.

The officer aired this information over the radio. A second officer saw two men running across a nearby street. After a short search, a third officer located two African–American men hiding behind separate clumps of bushes at an apartment complex located close to the street where the second officer had seen the running men.

One of these men was later identified as Michael Marshall; defendant was the other man. Defendant wore a padded winter coat, and carried gardening gloves and a ski mask in his pocket. The police did not find a multi-colored knit hat. In response to a question from an officer, defendant denied knowing Marshall.

Shortly after Marshall and defendant were arrested, the police brought the store owner to the apartment complex to see if he could identify them as the men he had seen at his door. Although the owner could not positively identify either man, he said defendant had the same height and build as one of the men who had tried to break into his store.

The police located a car in the parking lot in front of the store. They saw a photograph of Marshall on the dashboard.

They discovered that the car was owned by Marshall's brother-in-law. The brother-in-law testified at trial that (1) he had given Marshall the car between six and eighteen months before the attempted burglary; (2) he met defendant a few times at parties at Marshall's residence; and (3) Marshall and defendant lived close to each other in Aurora, at locations over twenty miles from the Lakewood store.

## II. Impeachment Evidence

■ Defendant contends the trial court improperly ruled that the prosecution would be allowed to impeach him with the contents of his notice of alibi, which he had previously withdrawn. Defendant further argues that this error "misled" him about the consequences of his testifying, and, therefore, his decision not to testify was not knowing and intelligent under *People v. Chavez*, 853 P.2d 1149, 1151 (Colo.1993), and *People v. Curtis*, 681 P.2d 504, 509–10 (Colo.1984). We conclude that we will not address this claim.

In *People v. Blehm*, 983 P.2d 779, 792 (Colo.1999), the supreme court held:

> [W]e believe sound reason exists to modify the review afforded to a defendant's claim of invalid waiver of the right to testify. These claims are best addressed in post-conviction[ ] proceedings where an evidentiary hearing is available if necessary to ascertain facts not present in the original trial record.

This is a direct appeal, not a postconviction proceeding. Therefore, under *Blehm*, we shall not address this claim.

## III. Hearsay Statement

■ Defendant contends the trial court's admission of the bystander's hearsay statement violated his right to confront the witnesses against him. We are not persuaded.

Defendant's counsel, not the prosecutor, first elicited this statement, asking two different officers about it. Then, in closing argument, defendant's counsel contended that, by not identifying the bystander, the police had negligently failed to gather potentially exculpatory evidence that would have shown that defendant and Marshall were not the men the bystander had seen.

Our review of the record supports the conclusion that defendant's counsel made a deliberate, tactical choice to introduce this evidence into the case. Therefore, he invited any error that may have resulted from its

introduction. *See People v. Stewart*, 55 P.3d 107, 119–20 (Colo.2002).

## IV. Sufficiency of the Evidence

■ Defendant contends the evidence introduced at trial was insufficient to support the jury's verdict. We disagree.

■ We review de novo a defendant's contention that the evidence was insufficient to support a conviction for an offense. *Dempsey v. People*, 117 P.3d 800, 807 (Colo. 2005). The test we apply is whether, when viewed as a whole and in the light most favorable to the prosecution, the proof is sufficient to support a conclusion by a reasonable person that the defendant is guilty of the offense beyond a reasonable doubt. *People v. Dunaway*, 88 P.3d 619, 625 (Colo.2004). In making this determination, we are mindful that "it is the jury which should decide the difficult questions of witness credibility and the weight to be given to conflicting items of evidence." *People v. Brassfield*, 652 P.2d 588, 592 (Colo.1982). We give the prosecution the benefit of all reasonable inferences drawn fairly from the evidence, and we recognize we do not function as a thirteenth juror, reversing convictions merely because we might reach different conclusions. *People v. McIntier*, 134 P.3d 467, 471–72 (Colo. App.2005).

Here, defendant argues the prosecutor did not provide sufficient evidence to show defendant's identity as one of the persons who attempted to break into the store, damaging the doorjamb. We disagree because:

- The owner identified defendant as being of the same race, having the same build, and being dressed similarly to one of the men at the door of his store.
- The owner saw the men run from his business when he yelled at them.
- A police officer, who testified at trial, saw the men running in the same direction.
- Defendant and Marshall were found hiding in the bushes at an apartment complex close to the store, which was located in the direction in which the men had run from the store.
- Marshall's car was found in the store's parking lot.

- Defendant and Marshall knew each other, and lived close to each other.
- Defendant and Marshall lived over twenty miles away from the store.

The evidence sufficiently established defendant's involvement in the attempted burglary. Therefore, we conclude that the proof here was sufficient to support a reasonable person's rational conclusion, beyond a reasonable doubt, that defendant was guilty of the crimes with which he had been charged.

## V. Jury Instruction

Defendant contends the trial court erred by giving a theft instruction that failed to inform the jury that the mental state "knowingly" applied to the element of the crime of theft that the taking had to be "without authorization." Defendant submits this was a structural error that requires reversal. We disagree.

### A. Structural Error

Defendant argues this error is structural. He recognizes that, in *Griego v. People*, 19 P.3d 1, 8 (Colo.2001), the supreme court overruled prior precedent and concluded that "elemental omissions or misdescriptions" in instructions are "subject to constitutional harmless or plain error analysis and [are] not reviewable under structural error standards." In reaching this conclusion, the court expressly overruled contrary precedent, including *Cooper v. People*, 973 P.2d 1234, 1242 (Colo.1999).

Defendant submits that the decision in *Cooper* was based upon both the United States and Colorado Constitutions, and that *Griego* was only based on the United States Constitution. Thus, he concludes, *Griego* only overruled *Cooper* to the extent it relied on the United States Constitution, and so *Cooper* now stands for the proposition that the Colorado Constitution requires structural error analysis in these circumstances.

We disagree with this chain of reasoning. Although *Cooper* referred to the Due Process Clauses of both the federal and state constitutions, it did not suggest any significant differences between them that would compel

a different analysis. In fact, they are almost identically worded. *Compare* U.S. Const. amend. XIV, § 1 ("nor shall any state deprive any person of life, liberty or property without due process of law"), *with* Colo. Const. art. II, § 25 ("no person shall be deprived of life, liberty or property without due process of law"). This likeness indicates that we look to cases interpreting the parallel federal constitutional language as persuasive. *See Dunaway*, 88 P.3d at 630 ("Where the analogous federal and state constitutional provisions are textually identical, we have always viewed cases interpreting the federal constitutional provision as persuasive authority.").

*Cooper* did not indicate that there should be a different standard of instructional error under the state constitution than would be applied under the federal constitution, and defendant has not cited any other case that stands for this proposition. In fact, Cooper relied heavily on *Bogdanov v. People*, 941 P.2d 247, 252–55 (Colo.1997), which was based on *People v. Vance*, 933 P.2d 576, 580–81 (Colo.1997). *Bogdanov* and *Vance* were also overruled by Griego. Aside from a passing reference to the Colorado Constitution, *Cooper, Bogdanov,* and *Vance* referred almost exclusively to federal precedent. Further, none of these cases discussed or analyzed whether the Colorado Constitution required the application of a standard different from the one governing the analysis under the federal Due Process Clause.

■ There is no reason for us to conclude that *Cooper* created two different standards of review and that *Griego* left one of them intact. Rather, we determine that, under *Griego*, the proper standard to apply here is plain error, because defendant did not object to the theft instruction at trial. *People v. Miller*, 113 P.3d 743, 748–49 (Colo.2005). As will be described in more detail below, the supreme court applied plain error analysis in *Auman v. People*, 109 P.3d 647, 665–66 (Colo. 2005), to the *same* error that defendant contends occurred here. There is no statement in *Auman*, which was decided about eight years after *Cooper* and four years after *Griego*, that the Colorado Constitution requires structural error analysis here.

## B. Plain Error

■ In applying the plain error standard to a jury instruction, "we must determine whether a reasonable possibility exists that the erroneous instruction contributed to [the defendant's] conviction such that serious doubt is cast upon the reliability of the jury's verdict." *Auman*, 109 P.3d at 665.

■ Here, defendant was charged with attempting to commit burglary with the intent to commit theft inside the store. The theft instruction contained the same defect that our supreme court found to be flawed in *Auman:* it did not make clear that the prosecution had to prove, beyond a reasonable doubt, that defendant knew he did not have authorization to take the store's property. *See* § 18–4–401(1), C.R.S.2007 ("A person commits theft when he knowingly obtains or exercises control over anything of value of another without authorization, or by threat or deception ..."). Thus, giving this flawed instruction was error. *Auman*, 109 P.3d at 664.

However, unlike in *Auman*, in which authorization was a primary issue, the issue whether defendant knew that he was not authorized to take property from the store was not contested at trial. Our reading of the record indicates that neither the prosecution nor defendant presented any evidence to indicate defendant thought he was authorized to take property from the store; and defendant never argued that the evidence suggested he believed he was authorized to take property from the store. Thus, although the flawed instruction was error, we conclude it was not plain error, because there was not a reasonable possibility that the erroneous instruction contributed to the conviction in a manner that cast doubt upon the reliability of the verdict. *Id.* at 666 (defect in a jury instructions is not plain error where the subject of the error is uncontested at trial).

## VI. Closing Argument

Defendant contends he was denied his due process right to a fair trial because of prosecutorial misconduct during closing arguments. Specifically, defendant argues the

prosecutor committed misconduct by offering his personal opinion, by urging the jury to use defendant's failure to testify against him, and by mischaracterizing the burden of proof. We are not persuaded.

■ Defendant did not object to the prosecutor's closing argument during trial. Thus, we review defendant's argument for plain error. *Miller*, 113 P.3d at 749–50. Comments that are few in number and momentary in length do not normally warrant reversal under the plain error standard. *Domingo–Gomez v. People*, 125 P.3d 1043, 1053 (Colo.2005).

■ When determining whether the prosecutor's statements were improper, and then whether the improper statements warrant reversal, we consider the language used; the context of the statements; whether the statements improperly expressed the prosecutor's personal opinion; whether the statements were an acceptable comment on the credibility of the witnesses; the strength of the evidence; whether the evidence was conflicting or inconclusive; whether the prosecutor improperly appealed to the jurors' sentiments; whether the misconduct was repeated; and any other relevant factors. *Id.* at 1049.

### A. Prosecutor's Opinion

■ Defendant argues the prosecutor improperly offered his personal opinion as to defendant's guilt. In closing, the prosecutor stated that, for defendant "to not be guilty based on evidence [the jury] heard, he has to be the unluckiest man on the planet times 100."

This comment contained a reasonable inference based on substantial evidence showing defendant was involved in the attempted burglary, and was therefore not improper. The thrust of this argument was that it was not a coincidence that defendant was found in the neighborhood of the store, because the evidence established defendant was twenty-two miles from home; he was discovered hiding in the bushes close to the store; he was found near Marshall, whose car was located in the parking lot of the store; his general physical characteristics were similar

to those of one of the men at the door; and he was wearing a jacket similar to the one the store owner had seen on the men at his door.

### B. Comment on Failure to Testify

■ A prosecutor may not argue that a defendant's silence implies that he or she is guilty. *People v. Isom*, 140 P.3d 100, 105 (Colo.App.2005). However, the prosecutor is entitled to comment on the absence of evidence to support a defendant's contentions. *People v. Welsh*, 176 P.3d 781, 788 (Colo.App. 2007). The test for whether a prosecutor's argument constitutes a comment on the defendant's failure to testify is whether the comment directs the jury's attention to the defendant's silence as a means of implying guilt. *People v. Abeyta*, 728 P.2d 327, 332 (Colo.App.1986).

Defendant argues that the prosecutor improperly asked the jury to find defendant guilty because of his failure to testify when the prosecutor referred to the absence of evidence explaining how or why defendant was discovered behind the bushes if he had not come with Marshall. However, the prosecutor did not refer to defendant's failure to testify, nor did he direct the jury's attention to defendant's silence as a way of implying guilt. Rather, the prosecutor commented on the lack of evidence explaining why defendant would be coincidentally discovered close to an attempted burglary, hiding behind bushes, over twenty miles from home, near a man whose car was found in front of the site of the attempted burglary, dressed similarly to one of the men seen at the site, within a few minutes of the act. This was a fair comment on the evidence, or lack of evidence, and the inferences which could be drawn from it. *See Welsh*, 176 P.3d at 788.

### VII. Burden of Proof

■ Defendant contends the prosecution's reference to "coincidences" suggested the prosecution was not required to prove defendant's guilt beyond a reasonable doubt. We are not persuaded.

The jury was properly instructed on the burden of proof, the prosecution never sug-

gested the burden of proof was less than the necessary standard, and the reference to co-incidences was no more than an appeal to common sense. This case was based on a combination of circumstances, and it was permissible for the prosecutor to argue that the sum of the circumstances was more than mere coincidence. *See United States v. Wis-niewski,* 478 F.2d 274, 279 (2d Cir.1973)(although mere coincidental presence at the crime scene is not enough to establish participation, participation in the crime may be proved by circumstantial evidence; and the jury may consider all the circumstances as a whole, which may be greater than the sum of the parts). Thus, under these circumstances, the prosecution's argument did not diminish the government's burden. *See People v. Martinez,* 652 P.2d 174, 179 (Colo.App.1981).

## VIII. Alleged Trial Court Bias

Defendant contends several comments made by the trial court indicated the court was biased against him and that these comments deprived him of his right to a fair trial. We disagree.

A defendant who alleges a trial court is biased must show that the court had "a substantial bent of mind against him or her. Speculative statements and conclusions are insufficient to satisfy the burden of proof." *People v. James,* 40 P.3d 36, 44 (Colo.App.2001). "Numerous irregularities, each of which standing alone is insignificant, may, when taken together, so affect the substantial rights of a defendant as to require reversal." *Id.* at 45. If a trial court makes repeated statements establishing that it is irritated with, or intolerant of, the defendant or his counsel, the cumulative nature of these statements can indicate a "negative bent of mind" against a defendant, constituting judicial bias and denying the defendant a fair trial. *Id.* However, a judge's comments that disappoint, discomfort, or embarrass counsel in the presence of the jury, without more, rarely constitute a deprivation of a fair trial. *People v. Coria,* 937 P.2d 386, 391–92 (Colo. 1997).

Here, defendant refers to four events in which the trial court: (1) held defense counsel in contempt for suggesting the court's rulings favored the prosecution; (2) corrected defense counsel before the jury when he made several references to a "pool hall" in the store's neighborhood when the evidence indicated that such a business did not exist; (3) rejected defendant's theory of the case instruction, but changed her mind and accepted it after the prosecution agreed the instruction should be given to the jury; and (4) threatened to impose another fine upon defense counsel after allegedly misinterpreting a remark defense counsel made to the court's clerk as a suggestion that the judge and the prosecutor were involved in ex parte communications.

Our review of these events does not support defendant's contention. First, the trial court warned defense counsel, in the jury's absence, that, if he persisted in making comments before the jury suggesting the court was biased in favor of the prosecution, the court would hold him in contempt and impose a one hundred dollar fine. When defense counsel replied it "clearly [was] the case" that the court was biased, the court made findings and imposed the penalty.

Second, the trial court's direction to defense counsel to stop referring to a "pool hall" in the neighborhood was appropriate. The evidence did not support defense counsel's reference.

Third, although the trial judge initially declined to give the jury defendant's theory of the case instruction, she changed her mind. Defendant was not prejudiced because the instruction defense counsel sought was read to the jury, and the discussion concerning it occurred outside the jury's presence.

Last, defense counsel's statement to the court's clerk, which the trial court interpreted as an accusation that the court and the prosecution were engaged in ex parte communications, is sufficiently ambiguous to support the innocent interpretation urged on us by defendant. However, considering the nature of defense counsel's prior statements to the trial court about favoring the prosecution, the statement can also be characterized in the manner adopted by the trial court. Thus, we cannot characterize this remark,

which also occurred in the jury's absence, as demonstrating bias against defense counsel.

Based upon our review of the record, we conclude that these comments, either individually or cumulatively, did not establish that the trial court was irritated with and intolerant of defense counsel, to the extent that the court displayed a negative bent of mind toward him, warranting reversal.

The judgment is affirmed.

Judge ROY and Justice ROVIRA * concur.