22CA1447 Peo v Morgan 05-07-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 22CA1447
Arapahoe County District Court No. 20CR1052
Honorable Ryan J. Stuart, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Philip Morgan,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE DUNN
Harris and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 7, 2026

---

Philip J. Weiser, Attorney General, Jaycey DeHoyos, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, River B. Sedaka, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    A jury found Philip Morgan guilty of two counts of sexual assault on a child as part of a pattern of abuse for abusing his daughter. On appeal, Morgan contends that the district court erred by (1) violating his constitutional right to a fair trial when it denied his motion for a mistrial; (2) admitting the victim's prior consistent statements; and (3) allowing the prosecutor to commit misconduct in closing argument. He also argues that the errors cumulatively deprived him of a fair trial. We affirm.

## I.    Background

¶ 2    When she was ten years old, the victim told her mother — Morgan's ex-wife — that Morgan had been sexually assaulting her for about a year. She related that the abuse occurred when she visited Morgan at his home. That disclosure led to a police investigation, after which the prosecution charged Morgan with five counts of sexual assault on a child as part of a pattern of abuse. One count was not bound over for trial and one count was dismissed during trial, leaving three counts for the jury.

¶ 3    Morgan testified at trial. While he admitted that he verbally abused the victim and physically disciplined her, he denied any sexual abuse or inappropriate touching. Defense counsel argued

1

that the victim fabricated the sexual abuse to end the verbal and physical abuse.

¶ 4 The jury convicted Morgan of two counts of sexual assault and acquitted him on the remaining count. It also found a sentence enhancer for penetration of a victim under twelve years old. The court sentenced Morgan to fifty years to life in prison.

## II. Mistrial Motion

¶ 5 Morgan contends that the district court violated his right to a fair trial and abused its discretion when it denied his motion for a mistrial after the court teared up during the victim's testimony.

## A. Additional Background

¶ 6 The victim was the first witness to testify at trial. During her testimony, the victim testified about Morgan's sexual abuse.

¶ 7 During the morning recess and outside the jury's presence, defense counsel made a record that he "noticed that the [c]ourt was tearing up" during the victim's testimony and he "was concerned how that presents to the jury." Arguing that the court's emotional response to the victim's testimony bolstered the victim's credibility and jeopardized Morgan's right to a fair trial, defense counsel asked for a mistrial.

¶ 8    The prosecution objected to the mistrial, adding that it had not seen the court tear up, the jury was "a significant distance" from the court, the "angles are different," and nothing suggested that the jury saw anything.

¶ 9    The court admitted that during one portion of the victim's testimony it "felt tears welling up," but "[n]o tears ever came out." The court added that "the moment" it felt tears welling up, it grabbed a statute book and looked down to dissociate from the testimony.

¶ 10    After a short break, the court supplemented the record. It explained that as it does with any witness, it scanned the courtroom during the victim's testimony and noticed defense counsel looking directly at the court. But it did not see the prosecution or the jury looking at the court. The court noted that the jury was "pretty focused on [the victim's] testimony." The court also described the courtroom layout, explaining that defense counsel is "directly" in the court's line of sight, but the jury is to its left "some distance away" and would have seen the court's side during the victim's testimony. And the court added that the clerk, who was seated to the court's left, saw the court "get a statute

book" but "wasn't able to see" the court's emotional response. Though the court had no indication that the jury had seen anything, it deferred ruling on the motion for mistrial to conduct legal research.

¶ 11    The next morning, the court asked if defense counsel "wanted to inquire of any of the jurors about anything that occurred." Though defense counsel "wanted to know" if the jury "witnessed the [c]ourt or not," out of "fear of what [inquiry] might bring up," defense counsel chose not to inquire.

¶ 12    The court acknowledged that it made a mistake and apologized for allowing its emotions "to become temporarily observable to at least some people in the courtroom." The court then added:

> Ultimately, what it comes down to is that mistrial is a drastic remedy, and is warranted only when the prejudice to the accused is so substantial that its effect on the jury can't be remedied by other means.
>
> . . . .
>
> [T]he [c]ourt would have to make a number of assumptions to find prejudice to [Morgan]. The [c]ourt would first have to find that the jury saw my eyes begin to water. Again, no tears came from my eyes and as quickly as I could, moved so that the jury couldn't see - -

4

> removed my face so the jury couldn't have
> viewed my eyes.

¶ 13      The court went on to add that the jury would also have to assume the court's reaction was linked to the victim's testimony (as opposed to the cold it was fighting).[1]  Finding "no evidence that [Morgan] suffered any prejudice," the court denied the motion for mistrial.  It also offered to include a written instruction about the court's impartial role in the trial or "any other instructions that [the defense] requests," but the defense didn't request any additional instructions during the jury conference.  Defense counsel never asked the judge to recuse himself.

¶ 14      After the verdicts, defense counsel filed a motion for a new trial, arguing Morgan was prejudiced by the court's emotional display.  It included measurements showing that the distance from the bench to various jurors ranged from eighteen to twenty-six feet.  Again finding "no evidence the jury saw what defense counsel saw" and that Morgan suffered no prejudice, the court denied the motion.

---

[1] As part of its record, the court noted that it was coming down with a cold, which the jury had been aware of "since the beginning of the trial."  Indeed, during voir dire the court explained to the jury that it was wearing a mask because it was starting to cough and didn't want "to get anybody sick."

## B. Due Process

¶ 15    When a defendant claims that a district court's refusal to declare a mistrial violates his constitutional rights, we first determine whether an error occurred under the totality of the circumstances. *People v. Santana*, 255 P.3d 1126, 1130 (Colo. 2011).

¶ 16    "The due process clauses of the Colorado and United States Constitutions guarantee every criminal defendant the right to a fair trial." *Dunlap v. People*, 173 P.3d 1054, 1081 (Colo. 2007); U.S. Const. amends. V, XIV; Colo. Const. art. II, §§ 16, 25.  We review alleged due process violations de novo. *People v. Burlingame*, 2019 COA 17, ¶ 11.

¶ 17    Appearances of partiality may "imping[e] upon the defendant's right to a fair trial." *People v. Rogers*, 800 P.2d 1327, 1329 (Colo. App. 1990).  Thus, a court must avoid the appearance of partiality, not merely to secure the confidence of the litigants but to retain public respect and confidence in the administration of justice. *People v. Coria*, 937 P.2d 386, 391 (Colo. 1997).  "With respect to comments, questions, and ultimately, even a [court's] demeanor, more than mere speculation concerning the possibility of prejudice

must be demonstrated to warrant a reversal . . . ." *People v. Rodriguez*, 209 P.3d 1151, 1162 (Colo. App. 2008), *aff'd*, 238 P.3d 1283 (Colo. 2010). And "the record must clearly establish bias." *Id.* For this, the test is whether the court's conduct "departed from the required impartiality to such an extent" that it denied the defendant a fair trial. *Coria*, 937 P.2d at 391.

¶ 18    To be sure, all agree — including the district court — that the court should not have expressed emotion during the victim's testimony and that courts must exercise restraint over their conduct. *See id.* But we are unconvinced that the court's brief reaction to a portion of the victim's testimony denied Morgan a fair trial. *See id.* Nothing in the record shows that the jury — or anyone besides defense counsel — saw the court's reaction. Underscoring that point, Morgan asks us to speculate that the jury "probably saw it" and its "unlikely" the jury didn't see it. But we won't do that. And even defense counsel did not suggest as much at trial. Indeed, defense counsel admitted that he wanted to know what the jury saw; yet he declined the court's invitation to find out what, if anything, the jury saw. Beyond that, Morgan doesn't claim that the court's reaction otherwise impaired his right to a fair trial,

influenced the court's rulings, or reflected actual bias in favor of the victim.

¶ 19     *Rogers* doesn't change our analysis.  In *Rogers*, the defendant was charged with sexual assault on a child.  800 P.2d at 1328. During the trial, the court personally escorted the child victim to and from the witness stand.  *Id.*  The defense did not request a mistrial but instead appealed the conviction, arguing that the court's actions deprived the defendant of a fair trial.  *Id.*  A division of this court agreed, reasoning that the court's "very open and dramatic act" created an appearance of partiality to the child witness that, in turn, bolstered the child's credibility.  *Id.* at 1329.

¶ 20     That of course is not what happened here.  In *Rogers*, by treating the child witness unlike other witnesses and by walking alongside the child witness, the court at least visually aligned itself with the child.  There is no doubt that the jury saw that "very open and dramatic act," which the division concluded prejudiced the defendant.  *Id.*  But here, all we know is that the court's eyes began to water during a portion of the victim's testimony, and when that happened the court looked down at a book.  That is different from

the court physically escorting a child witness — in full view of the jury — to the witness stand.

¶ 21    Under these circumstances, and without more in the record, we cannot conclude that the court's brief emotional reaction to a portion of the victim's testimony deprived Morgan of his right to a fair trial.

### C. Denial of the Motion

¶ 22    Absent a constitutional violation, the denial of a motion for a mistrial is directed to the sound discretion of the district court. *Santana*, 255 P.3d at 1130. We will not disturb its decision "absent a gross abuse of discretion and prejudice to the defendant." *People v. Owens*, 2024 CO 10, ¶ 125.

¶ 23    Because a mistrial is "the most drastic of remedies," it is "warranted only when the prejudice to the defendant is too substantial to be remedied by other means." *Id.* (citation omitted). Speculative prejudice is not enough to warrant a mistrial. *People v. Snider*, 2021 COA 19, ¶ 34; *accord People v. Ned*, 923 P.2d 271, 275 (Colo. App. 1996).

¶ 24    As already discussed, Morgan presents nothing more than speculation that one or more jurors saw the court's reaction, and

that it "would've probably" impacted the jury. Because the record is silent on whether the jury saw the court's emotional display, Morgan is unable to establish any prejudice — let alone the "substantial" prejudice required for a mistrial. *Owens*, ¶ 125; *see also Ned*, 923 P.2d at 276 (concluding that a mistrial was not warranted when the defendant "pointed to no specific prejudice").

¶ 25 And the record is silent precisely because defense counsel opted to leave it that way. But absent inquiry, neither the parties nor the court could determine if any remedy was needed, and if so, whether an adequate remedy existed that could cure any prejudice. *See Owens*, ¶ 125 (mistrial warranted only where the prejudice cannot be remedied by other means); *People v. Mersman*, 148 P.3d 199, 204 (Colo. App. 2006) (noting that where the defendant did not request a curative instruction, the court did not abuse its discretion by denying the motion for mistrial).

¶ 26 None of this is to suggest that we are unconcerned about this record. Courts must be fair and impartial. *Coria*, 937 P.2d at 391. And while no one is impervious to emotion, courts must maintain decorum and emotional control. *Id.* Unfortunately, that doesn't always happen. More commonly, emotions spill out in intemperate

or ill-advised comments, leading to claims of bias and prejudice. *E.g.*, *Bruce v. City of Colorado Springs*, 252 P.3d 30, 36 (Colo. App. 2010) (motion to disqualify included allegations that the court "continually scowled, frowned, and made other facial gestures at [the] plaintiff to express the [court's] disapproval of [the] plaintiff's testimony").

¶ 27    But absent any indication that the jury saw the court's emotional reaction to the victim's testimony, we conclude that the district court didn't abuse its considerable discretion by denying the mistrial motion.

### III.    Prior Consistent Statements

¶ 28    On the second day of trial, the prosecution questioned an investigator about statements the victim made during two pretrial interviews. After defense counsel objected that the investigator had not been endorsed as an expert witness, the prosecution explained that it was not eliciting expert testimony but rather that it planned to introduce the statements the victim made to the investigator as prior consistent statements because the victim's credibility had been attacked.

11

¶ 29    During the direct examination, defense counsel again objected, stating, "[H]earsay.  This *is not* prior consistent statement." (Emphasis added.)  The court overruled the objection, finding the statements were being offered for "the credibility of the witness" and not "for the truth of the matter."  During a later colloquy, the prosecutor suggested that some of the statements were substantive evidence.

¶ 30    Prior consistent statements may be admitted under CRE 801(d)(1)(B) as substantive evidence to rebut a charge of recent fabrication or improper motive.  *People v. Eppens*, 979 P.2d 14, 20 (Colo. 1999).  They may also be admitted as rehabilitative statements "outside CRE 801(d)(1)(B)."  *Id.* at 21.

¶ 31    Morgan now generally argues that the victim's prior statements were "inadmissible under both theories" because the statements made to the investigator were not made before the victim's motive to fabricate arose.

¶ 32    Because this is not the same objection raised at trial, it is unpreserved.  *People v. Ujaama*, 2012 COA 36, ¶ 37.  We therefore review for plain error and will reverse only if the error is obvious and substantial.  *People v. Liebler*, 2022 COA 21, ¶ 42.  An error is

obvious when it contravenes a statute or rule, or established Colorado case law. *Id.*

¶ 33 Addressing the first theory, to the extent Morgan contends the prior statements were inadmissible under Rule 801(d)(1)(B) because they did not pre-date the victim's motive to fabricate, he doesn't identify any specific statements that he claims were improperly admitted under the rule. And in any event, divisions of this court disagree on whether Rule 801(d)(1)(B) contains a pre-motive requirement. *Compare People v. Johnson*, 987 P.2d 855, 860 (Colo. App. 1998) (concluding Rule 801(d)(1)(B) contains a temporal requirement requiring statements to predate motive to fabricate), *with People v. Koon*, 724 P.2d 1367, 1372 (Colo. App. 1986) (noting the rule "is silent" as to when the statement must have been made and holding that it "encompasses statements made both before and after the time of the alleged impropriety or the time when the supposed motive to falsify arose"); *see also Eppens*, 979 P.2d at 19 (declining to decide whether the rule "embodies a pre-motive requirement"). Because the law is unsettled on the pre-motive requirement, any error in admitting statements under Rule 801(d)(1)(B) would not be obvious.

¶ 34    Turning to the second theory, Morgan contends that the pre-motive requirement "logically" applies to the victim's rehabilitative prior statements admitted outside CRE 801(d)(1)(B).  With one exception addressed next, Morgan again doesn't identify any specific statements that he claims were improperly admitted as rehabilitative statements.  Besides that, we are not aware of any authority supporting his assertion that a pre-motive requirement applies to rehabilitative statements and he directs us to none.

¶ 35    Morgan does identify one prior statement that the victim made to a forensic interviewer about a man's "bottom part" and what it is used for.  Morgan claims that the investigator's testimony about the statement was inadmissible because it didn't exactly track the victim's prior statement and because it "had no probative value independent of the fact that" the victim made the same accusation twice.  But that's not right.  Because the defense attacked the victim's credibility, the probative force comes from the fact that the witness's trial testimony is not inconsistent with all her prior statements.  Thus, the testimony was rehabilitative.  *See Eppens*,

14

979 P.2d at 21 ("[P]rior consistent statements may be used for rehabilitation when a witness' credibility has been attacked . . . .").[2]

## IV. Prosecutorial Misconduct

¶ 36 Morgan contends that the district court erred by allowing the prosecutor to commit misconduct during closing and rebuttal argument. Morgan specifically argues that the prosecutor committed misconduct by (1) misstating the evidence; (2) stating a personal opinion; (3) lowering the burden of proof; and (4) appealing to sympathy.

### A. Legal Principles and Standard of Review

¶ 37 In reviewing a claim that a prosecutor committed misconduct during closing argument, we engage in a two-step analysis. *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010). First, we decide whether the statements were improper. *Id.* Second, if the comments were improper, we must decide whether they warrant reversal under the appropriate standard. *See id.*

---

[2] To the extent Morgan also asserts that the investigator's testimony improperly bolstered the victim's credibility, he does so in a perfunctory manner without separately developing that argument. We therefore don't address it. *See People v. Wallin*, 167 P.3d 183, 187 (Colo. App. 2007).

¶ 38     Morgan objected to all but one of the challenged comments. Where preserved by objection, whether a prosecutor committed misconduct is an issue within the district court's discretion. *See People v. Van Meter*, 2018 COA 13, ¶ 25. If the court abused its discretion, we review Morgan's preserved arguments for harmless error. *Id.*; *Yusem v. People*, 210 P.3d 458, 469 (Colo. 2009). Prosecutorial misconduct is deemed harmless "whenever there is no reasonable probability that it contributed to the defendant's conviction." *Crider v. People*, 186 P.3d 39, 42 (Colo. 2008).

¶ 39     We review Morgan's unpreserved contentions for plain error. *Hagos v. People*, 2012 CO 63, ¶ 14. For prosecutorial misconduct to rise to the level of plain error, it must be flagrantly or glaringly or tremendously improper, and it must so undermine the trial's fundamental fairness as to cast serious doubt on the judgment of conviction's reliability. *Liebler*, ¶ 52.

### B.     Misstating the Evidence

¶ 40     The court qualified a generalized expert to testify about "the dynamics of child sexual abuse and child sexual trauma." The expert thus offered no specific testimony about the victim's abuse or trauma.

¶ 41 During closing argument, the prosecution argued, "Trauma, ladies and gentlemen, [the generalized expert] told you [the victim] was experiencing trauma when she — " Defense counsel objected on the grounds of "misstatement of law" and "bolstering." After the court reminded the jury "to rely on your own recollection of the evidence," it overruled the objection. The prosecutor, however, moved on to other evidence and did not continue the argument that it started.

¶ 42 Morgan now contends that the prosecutor misstated the evidence because the generalized expert "never said [the victim] experienced trauma."

¶ 43 We agree that the prosecutor misstated the generalized expert's testimony. But the court properly reminded the jury to rely on its own recollection of the evidence. And the prosecutor immediately moved on to a summary of the victim's testimony without repeating the misstatement. Thus, though the court should have sustained the objection, the improper comment was incomplete and fleeting. Evidencing that reality, even Morgan doesn't argue there is a "reasonable probability" that the improper

statement "contributed to the defendant's conviction." *Crider*, 186 P.3d at 42.

### C.    Expressing Personal Opinion

¶ 44    While discussing the victim's credibility, the prosecutor argued:

> [The victim] described in detail an assault that happened in her room.  She told you she had gone to sleep, tied her pants as tight as she could possibly tie them.  There was a draw string on them.  Twelve times.  She said 12 times.  I have no doubt that it felt like 12 times to [the victim], ladies and gentlemen.

¶ 45    The court sustained defense counsel's objection that the argument was improper opinion.  Defense counsel did not request any additional curative measures.  Because Morgan doesn't claim the court erred by not taking additional curative measures, and we presume the jury followed the court's ruling, there is nothing for us to review.

### D.    Lowering the Burden of Proof

¶ 46    Before closing arguments, the court instructed the jury on, among other things, the presumption of innocence, the prosecution's burden of proof, and unanimity.

¶ 47     During closing argument, the prosecutor attempted to explain the unanimity verdict form to the jury and stated:

> If, for example, ten of you believe that all the acts of sexual contact occurred, and two of you believe that it occurred in dad's room, that means there is unanimity as to one count. Because everybody can agree that it happened in dad's room. That's a guilty verdict for one count.
>
> Same goes for if ten of you believe that everything happened, and two of you believe it happened on the couch, then everyone is in agreement that it happened on the couch. You are unanimous. That is a guilty verdict.

¶ 48     Defense counsel objected to "burden lowering" and said that "it[']s beyond a reasonable doubt, not just a belief." The court responded, "I've instructed the jury as to the burden of proof."

¶ 49     Morgan maintains that the explanation of the unanimity verdict form improperly "lowered [the prosecution's] burden to a mere 'belief' of guilt."

¶ 50     Though perhaps inartful, the prosecutor's comments were meant to explain and clarify the unanimity verdict form. The argument didn't suggest the prosecution didn't need to satisfy its burden of proof and, indeed, the court immediately reminded the jury that it had been instructed on the burden of proof. And the

19

prosecutor, too, reiterated the correct burden of proof at the end of her closing and rebuttal closing arguments.

¶ 51    Considered in context, we conclude that the court acted within its discretion by immediately reminding the jury that the court had instructed it on the burden of proof.

### E.    Appealing to Sympathy

¶ 52    During rebuttal closing argument, the prosecutor responded to defense counsel's credibility attacks, including the defense's focus on the victim's inconsistencies in reporting the abuse to different people.  As part of that response, the prosecutor argued:

> Every single time she's spoken about this, she has struggled to recount the details of the first time.
>
> . . . .
>
> [The victim's] always been clear that she doesn't want to talk about this.  Think about her body language on the stand, where she's leaning forward, her arms back, getting emotional, and saying, I just want this to be over, I want it to stop.  *This is not a subject that [the victim] wants to talk about, but for two years she has been forced to relive this trauma.*  It's tough.  And it always is.  And it took her time to disclose.  And she didn't share those full details with her mother.  She's always been consistent about what she did tell her mother, that she didn't tell her the full story.  And [the

> victim's mother] told you, she didn't inquire or
> press.

(Emphasis added.)

¶ 53     Defense counsel did not object to the argument at trial but now argues that the italicized portion improperly appealed to the jury's sympathy.

¶ 54     But a prosecutor is permitted to "draw reasonable inferences as to the demeanor and credibility of witnesses." *People v. Constant*, 645 P.2d 843, 846 (Colo. 1982). And that's what happened here. Read in context, the argument was a response to defense counsel's credibility attacks. The prosecutor's reference to the fact that the victim didn't want to talk about the abuse explains why she may have delayed disclosure and why her reports to different people might be dissimilar or have different levels of detail. And the reference to reliving the event is tethered directly to the prosecutor's summary of the various interviews the victim gave in the years before trial in which she had to recount the abuse. *See Domingo-Gomez v. People*, 125 P.3d 1043, 1048 (Colo. 2005) ("[A] prosecutor has wide latitude in the language and presentation style

used to obtain justice."). We therefore disagree that the argument was improper.

### F. Cumulative Prosecutorial Misconduct

¶ 55 Morgan doesn't argue that any of the allegedly improper comments standing alone warrant reversal. Instead, he contends that the cumulative effect of the prosecutor's misconduct requires reversal. But because we've identified only one improper statement, we reject Morgan's cumulative misconduct claim. *Cf. People v. Buckner*, 2022 COA 14, ¶ 20 ("If we find multiple instances of prosecutorial misconduct, we 'must carefully review whether the cumulative effect of the prosecutor's statements so prejudiced the jury's verdict as to affect the fundamental fairness' of the trial." (citation omitted)).

### V. Cumulative Trial Error

¶ 56 Finally, because we disagree that the district court committed multiple errors, we also reject Morgan's contention that the cumulative effect of the alleged errors deprived him of a fair trial. *See People v. Conyac*, 2014 COA 8M, ¶ 152 ("The doctrine of cumulative error requires that numerous errors be committed, not merely alleged.").

## VI.  Disposition

¶ 57  The judgment is affirmed.

JUDGE HARRIS and JUDGE MOULTRIE concur.