The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
February 8, 2018

## 2018COA12

## No. 14CA0144, *People v. Trujillo* — Criminal Law — Sentencing — Probation — Indeterminate Sentence

A division of the court of appeals considers whether a

Colorado statute authorizes imposition of a sentence to an

indeterminate term of probation and whether the defendant was

entitled to the benefit of amendments to the statute criminalizing

theft. Relying on *People v. Jenkins*, 2013 COA 76, 305 P.3d 420,

the division concludes that section 18-1.3-202(1), C.R.S. 2017,

provides statutory authority for the imposition of an indeterminate

probation sentence. Following *People v. Stellabotte*, 2016 COA 106,

___ P.3d ___ (*cert. granted* Feb. 6, 2017), the majority further

concludes that the defendant is entitled to the benefit of

amendments to the theft statute. The partial dissent concludes

that the amendments to the theft statute do not apply retroactively, and would therefore affirm the sentence in full.

Additionally, the division rejects the defendant's contentions that reversal is required due to the trial court's rejection of defense-tendered jury instructions, wrongfully admitted character evidence, and prosecutorial misconduct. However, the division remands for the trial court to make findings of fact concerning the assessment of the costs of prosecution.

Accordingly, the division affirms the conviction, affirms the sentence in part, vacates the sentence in part, and remands the case with directions.

Court of Appeals No. 14CA0144
Mesa County District Court No. 11CR447
Honorable Valerie J. Robison, Judge

_____

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Michael Floyd Trujillo,

Defendant-Appellant.

_____

JUDGMENT AFFIRMED, SENTENCE AFFIRMED IN PART AND
VACATED IN PART, AND CASE REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE TAUBMAN
Richman, J., concurs
Furman, J., concurs in part and dissents in part

Announced February 8, 2018

_____

Cynthia H. Coffman, Attorney General, Joseph G. Michaels, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Douglas K. Wilson, Colorado State Public Defender, James S. Hardy, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Michael Floyd Trujillo, appeals his judgment of conviction entered on a jury verdict finding him guilty of one count of theft of more than $20,000 and one count of criminal mischief of $20,000 or more. He also appeals his sentence. We perceive no basis for reversing his convictions, but remand for the trial court to make findings of fact regarding the assessment of the costs of prosecution and to reclassify his theft conviction as a class 4 felony.

## I.  Background

¶ 2    In 2007, Trujillo began building a home, doing much of the labor himself and initially using his own money to fund the project. He later took out a construction loan from the victim, a bank, for just under $255,000. After construction was completed on the house, Trujillo stopped making his monthly loan payments. The bank declined to restructure the loan and initiated foreclosure proceedings in September 2010.

¶ 3    Before the foreclosure sale, Trujillo removed or destroyed property in the house, including kitchen cabinets, countertops, interior and exterior doors, doorjambs and casings, flooring, baseboards, light fixtures, bathroom fixtures, the fireplace, handrails, the boiler, the air conditioner, and the garage door.

Because of this damage, the house was appraised at $150,000; however, the appraiser estimated that if the house were in good repair, it would have been worth $320,000.

¶ 4    Trujillo was charged with defrauding a secured creditor, theft of $20,000 or more, but less than $100,000, and criminal mischief of $20,000 or more, but less than $100,000.  The jury found him not guilty of defrauding a secured creditor and guilty of theft and criminal mischief.

¶ 5    On appeal, Trujillo raises six contentions: (1) the trial court erred in rejecting defense-tendered jury instructions; (2) the trial court erred in allowing evidence of a prior foreclosure against Trujillo; (3) prosecutorial misconduct during direct examination of a witness and closing rebuttal argument warrants reversal; (4) the trial court imposed an illegal sentence of indeterminate probation; (5) the trial court erred in awarding the People costs of prosecution; and (6) an amendment to the theft statute applies to his conviction. We perceive no basis for reversal with respect to the first four contentions, but agree with Trujillo's final two contentions.  We therefore affirm the convictions and the sentence in part but vacate the sentence in part and remand with directions.

## II. Jury Instructions

¶ 6 Trujillo asserts that the trial court erred in rejecting various jury instructions regarding his theory of the case. We disagree.

### A. Additional Facts

¶ 7 Throughout trial, the defense's theory of the case was that Trujillo lacked the requisite intent to commit the charged offenses because he believed that the property he removed from the house belonged to him. The defense tendered five jury instructions related to this theory of the case.

¶ 8 Trujillo's tendered jury instructions detailed property law concepts. For example, the first tendered instruction stated that "the person who has title to real property is still the owner of the property even if there is a lien or secured interest on the property." Another tendered instruction defined "title," "deed of trust," and "holder of a certificate of purchase[]." One instruction described the lien theory detailed in section 38-35-117, C.R.S. 2017, and another instructed that title to property "does not vest with the purchaser until eight days after [a] foreclosure sale."

¶ 9 The trial court declined to give these instructions as tendered. However, portions of the defense-tendered instructions were

included in a final definitional jury instruction. The final instructions defined "deed of trust" and stated that the title to property is transferred to the holder of the certificate of purchase eight days after a foreclosure sale. Though it rejected other portions of the defense-tendered instructions, the trial court permitted defense counsel to argue the issues raised in the instructions during closing argument.

¶ 10    The defense also tendered an instruction which the trial court modified and gave as a theory of the case instruction. That instruction stated, "Trujillo contends that the items removed from the home . . . were his; purchased by him and installed by him. . . . Trujillo conten[d]s that the items that he took and damaged were his sole property."

## B. Standard of Review

¶ 11    We review jury instructions de novo to determine whether, as a whole, they accurately informed the jury of the governing law. *Riley v. People*, 266 P.3d 1089, 1092-93 (Colo. 2011). If the jury instructions properly inform the jury of the law, the district court has "broad discretion to determine the form and style of jury instructions." *Day v. Johnson*, 255 P.3d 1064, 1067 (Colo. 2011).

Accordingly, we review a trial court's decision concerning a proposed jury instruction for an abuse of discretion and will not disturb the ruling unless it is manifestly arbitrary, unreasonable, or unfair. *Id.*

¶ 12 When a defendant objects to the trial court's ruling on a jury instruction, we review for nonconstitutional harmless error and will thus affirm if "there is not a reasonable probability that the error contributed to the defendant's conviction." *People v. Garcia,* 28 P.3d 340, 344 (Colo. 2001) (quoting *Salcedo v. People,* 999 P.2d 833, 841 (Colo. 2000)).

## C. Applicable Law

¶ 13 "[A]n instruction embodying a defendant's theory of the case *must be given* by the trial court if the record contains any evidence to support the theory." *People v. Nunez,* 841 P.2d 261, 264 (Colo. 1992). Moreover, a trial court has "an affirmative obligation" to work with counsel to correct a tendered theory of the case instruction "or to incorporate the substance of such in an instruction drafted by the court." *Id.* at 265; *see also People v. Tippett,* 733 P.2d 1183, 1195 (Colo. 1987) (a trial court may refuse to give an instruction already embodied in other instructions).

5

¶ 14    In considering whether a jury was adequately informed of a

defendant's theory of the case, a reviewing court can take into

account whether defense counsel's closing argument "fairly

represented" the theory to the jury. *People v. Dore*, 997 P.2d 1214,

1222 (Colo. App. 1999).

### D. Analysis

¶ 15    Trujillo contends that the trial court abused its discretion in

rejecting the tendered instructions. We disagree.

¶ 16    Trujillo asserts that the tendered instructions were essential

because they communicated his theory of the case. However, the

trial court instructed the jury on his theory of the case in an

instruction that clearly stated that he believed the property he took

from the house was "his sole property." To the extent that the trial

court had a duty to work with the defense in crafting a proper

theory of defense instruction, we conclude that the trial court

fulfilled that duty here by giving an alternative theory of the case

instruction that encompassed Trujillo's tendered instructions. *See*

*Nunez*, 841 P.2d at 265 n.9. Moreover, the trial court specifically

stated that defense counsel would be allowed to incorporate the

property law concepts into her closing argument, which defense counsel did.

¶ 17    Trujillo asserts that the instructions he tendered were accurate statements of property law. In contrast, the People argue that the instructions misstated the law as it applies in criminal prosecutions for theft and criminal mischief. Because we conclude that the trial court did not abuse its discretion in drafting a theory of defense instruction that encompassed the defense's tendered instructions, we do not address whether the rejected instructions were accurate statements of the law.

¶ 18    The jury instructions, as a whole, "fairly and adequately cover[ed] the issues presented." *People v. Pahl*, 169 P.3d 169, 183 (Colo. App. 2006). Thus, we conclude that the trial court did not abuse its discretion in rejecting in part the defense-tendered jury instructions.

### III.  Evidence of Prior Foreclosure

¶ 19    Trujillo next asserts that the trial court erred in allowing the People to introduce evidence that another property of his had been foreclosed. We disagree.

7

## A. Additional Facts

¶ 20    Before trial, Trujillo filed a motion to exclude evidence of other acts or res gestae evidence. Trujillo's motion addressed several categories of other acts evidence, including evidence related to any "financial and/or legal problems" unrelated to the charged offenses. During a motions hearing, the People stated that they did not intend to introduce any other acts or res gestae evidence. In a written ruling, the trial court granted Trujillo's motion to exclude evidence of his unrelated financial and legal problems "unless the prosecution fe[lt] that the 'door ha[d] been opened.'" The trial court further ordered that, if the People felt Trujillo introduced evidence of his other financial and legal problems, the People could request a bench conference during trial.

¶ 21    On the first day of trial, defense counsel stated that she was withdrawing her motion to exclude other acts evidence insofar as it pertained to evidence of Trujillo's bankruptcy proceedings. During her opening statement, defense counsel then mentioned those proceedings.

¶ 22    Later, the People called the bank's former vice president as an expert witness. During direct examination, the prosecutor asked

8

the witness why the bank had declined to restructure Trujillo's loan. The prosecutor also asked about Trujillo's demeanor during interactions with the bank. Trujillo objected. After a bench conference, the trial court allowed the witness to testify on both matters.

¶ 23 Specifically, the witness testified that, during a conversation about restructuring the loan, Trujillo "seemed like he was very upset." The witness recalled, "He got into [that] he had a piece of property that [another bank] had foreclosed on and it sounded like they had sold it for what [Trujillo] believed was a lot less, leaving him a large deficiency balance."

¶ 24 During closing argument, the People alluded to the witness's testimony and referred several times to Trujillo's general animosity against banks.

### B. Standard of Review

¶ 25 We review a trial court's decision to admit other acts or res gestae evidence for an abuse of discretion. *People v. Jimenez*, 217 P.3d 841, 846 (Colo. App. 2008). A court abuses its discretion if its decision to admit such evidence is manifestly arbitrary, unreasonable, or unfair. *Id.*

9

¶ 26    We review a preserved claim of nonconstitutional error for harmless error, reversing only if any error "substantially influenced the verdict or affected the fairness of the trial proceedings." *Hagos v. People*, 2012 CO 63, ¶ 12, 288 P.3d 116, 119 (quoting *Tevlin v. People*, 715 P.2d 338, 342 (Colo. 1986)).

### C.  Applicable Law

¶ 27    Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401.  Generally speaking, "[t]he Colorado Rules of Evidence strongly favor the admission of relevant evidence." *People v. Brown*, 2014 COA 155M-2, ¶ 22, 360 P.3d 167, 172. However, relevant evidence is nevertheless inadmissible when "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." CRE 403.  Similarly, evidence of "other crimes, wrongs, or acts" is inadmissible to prove a person's character "in order to show that he acted in conformity therewith," though it may be admissible for other purposes, including proving intent.  CRE 404(b).

¶ 28     "*Res gestae* is a theory of relevance which recognizes that certain evidence is relevant because of its unique relationship to the charged crime." *People v. Greenlee*, 200 P.3d 363, 368 (Colo. 2009). However, "there is no need to consider an alternative theory of relevance, such as *res gestae*, where the evidence is admissible under general rules of relevancy." *Id.*

### D.  Analysis

¶ 29     Trujillo contends that the evidence of the prior foreclosure action portrayed him as a "serial defaulter" and was impermissible under CRE 404(b) and 403.  The People assert that the evidence was admissible as "directly relevant" to Trujillo's intent and motive. In the alternative, the People argue that the evidence was res gestae evidence.  We agree with the People's first argument that the evidence was admissible under CRE 401, and was not barred by CRE 403.[1]

---

[1] During the bench conference, the trial court allowed the bank's former vice president to testify after conducting an abbreviated CRE 404(b) analysis that did not specifically address the four-factor test set forth in *People v. Spoto*, 795 P.2d 1314, 1318 (Colo. 1990).  The trial court did not admit the evidence under the res gestae doctrine. However, we can affirm a trial court's evidentiary ruling on any ground supported by the record, "even if that ground was not

11

¶ 30    The evidence of the prior foreclosure was probative of the interactions between Trujillo and the bank — it made it more probable that Trujillo had the requisite intent to commit theft.  It was therefore relevant under CRE 401.  Further, the risk of unfair prejudice did not substantially outweigh the probative value of the evidence, especially where the prior foreclosure was referenced only in passing and the details of that foreclosure were not revealed.  Thus, the evidence was not barred by CRE 403.

¶ 31    Because we conclude that the evidence of the prior foreclosure was relevant under CRE 401 and admissible under CRE 403, we need not address whether the evidence was res gestae evidence or "other acts" evidence under CRE 404(b).  *See Greenlee*, 200 P.3d at 368-69.  Accordingly, we conclude that the trial court did not err in allowing the testimony concerning the prior foreclosure action.

## IV.  Prosecutorial Misconduct

¶ 32    Trujillo argues that the prosecutor improperly commented on the district attorney's screening process for bringing charges and

---

articulated or considered by the trial court." *People v. Phillips*, 2012 COA 176, ¶ 63, 315 P.3d 136, 153.

Trujillo's right not to testify, and improperly denigrated defense counsel. We perceive no basis for reversal.

## A. Additional Facts

¶ 33 During redirect examination of one of the People's expert witnesses, an attorney who worked at the bank, the prosecutor asked whether the bank played a role in charging Trujillo. The prosecutor asked if the witness himself made the decision to file a criminal case, to which the witness replied, "No." The prosecutor then asked, "[W]ho is it, according to your understanding, that makes those decisions on whether a case gets filed criminally?" The witness responded, "A complaint's made to a police department or sheriff's department and they make that decision in conjunction with I believe you." The prosecutor clarified that "you" meant the district attorney's office. The defense did not object.

¶ 34 During rebuttal closing argument, the prosecutor said,

> Did you hear all that? [Defense counsel]'s talking about all of this stuff, about what Trujillo's intent was. And then did you hear her towards the end what she did? She says, and correct – this part was correct of what she said. My job is to prove intent, right. That is my burden. And she's absolutely right. The Defendant has every right to remain silent,

13

and he exercised that right and that is something that you cannot use against him.

But it is completely ridiculous for [defense counsel] to get up here and say that [Trujillo] didn't testify to what his intent was and then to go on and talk about what his intent actually was. We don't know what his intent was because he never testified to that, which he has every right to do. But did you hear her? She's up here saying his intent was this.

¶ 35 Trujillo objected on the basis that the prosecutor was denigrating defense counsel. The trial court sustained the objection as to the prosecutor's tone, but overruled it as to content. The prosecutor then argued, "[I]f you go out and run somebody over and – and think that you had the right to do that, is that gonna be a legitimate defense by saying, well, I thought I could do that. I didn't – nobody ever told me. Nobody put it in writing. When I bought my car, in the instruction manual, nothing said that about that. That's preposterous." Trujillo did not renew his objection.

## B. Standard of Review

¶ 36 In reviewing alleged prosecutorial misconduct, an appellate court engages in a two-step analysis. First, we determine whether the prosecutor's conduct was improper based on the totality of the circumstances. *Wend v. People,* 235 P.3d 1089, 1096 (Colo. 2010).

14

Second, we determine whether any misconduct warrants reversal under the proper standard of review. *Id.*

¶ 37    When the alleged misconduct is objected to at trial and is of constitutional magnitude, we review for constitutional harmless error. *Id.* When the alleged misconduct is not of a constitutional magnitude, and when the defense objected at trial, we subject the prosecutorial misconduct to harmless error review. *Id.* at 1097. Such prosecutorial misconduct will be considered harmless "whenever there is no reasonable probability that it contributed to the defendant's conviction." *Crider v. People*, 186 P.3d 39, 42 (Colo. 2008). When the defense did not object to the misconduct, we review for plain error. *Wend*, 235 P.3d at 1097-98.

## C.  Applicable Law

¶ 38    A prosecutor cannot comment on a "screening process" for charging cases "because it both hints that additional evidence supporting guilt exists and reveals the personal opinion of the prosecutor." *Domingo-Gomez v. People*, 125 P.3d 1043, 1052 (Colo. 2005). It is also improper for a prosecutor to make remarks "for the obvious purpose of denigrating defense counsel." *People v. Jones*, 832 P.2d 1036, 1038 (Colo. App. 1991). It is similarly improper for

15

a prosecutor to comment on a defendant's decision not to testify. *Griffin v. California*, 380 U.S. 609, 614 (1965); *see also People v. Martinez*, 652 P.2d 174, 177 (Colo. App. 1981) (noting that a prosecutor's comment on a defendant's silence constitutes reversible error when "the prosecution argued that such silence constituted an implied admission of guilt").

¶ 39    Nevertheless, "[a] prosecutor is allowed considerable latitude in responding to the argument made by opposing counsel." *People v. Ramirez*, 997 P.2d 1200, 1211 (Colo. App. 1999), *aff'd*, 43 P.3d 611 (Colo. 2001). Further, "[a]lthough it is improper for a prosecutor to assert that opposing counsel knows that the accused's case is not meritorious," the prosecutor may permissibly argue "that the evidence in support of defendant's innocence lacked substance." *Id.* at 1211; *see also People v. Samson*, 2012 COA 167, ¶ 31, 302 P.3d 311, 317 (stating that a prosecutor may permissibly "comment on the absence of evidence to support a defendant's contentions").

¶ 40    Appellate courts consider several factors in determining whether prosecutorial misconduct was prejudicial, including the nature of the error, the pervasiveness of the misconduct, the

context, and the overall strength of the evidence supporting the conviction. *People v. McBride*, 228 P.3d 216, 225 (Colo. App. 2009); *see also Crider*, 186 P.3d at 43. For example, a reviewing court may consider whether proper jury instructions mitigated the prejudicial effect of prosecutorial misconduct. *See People v. Castillo*, 2014 COA 140M, ¶ 78, ___ P.3d ___, ___ (concluding prosecutor's misstatements were harmless in light of instructions from the trial court and the defense's closing argument) (*cert. granted in part* Nov. 23, 2015).

## D. Analysis

¶ 41     Trujillo contends that three instances of prosecutorial misconduct require reversal. We disagree.

¶ 42     Trujillo first contends that the prosecutor improperly referred to a screening process while examining the expert witness. We perceive no prosecutorial misconduct. The prosecutor here did not imply that he had engaged in a screening process to "weed out the weaker cases and, implicitly, that the State d[id] not consider this a weak case." *Domingo-Gomez*, 125 P.3d at 1052 (concluding the prosecutor's comment that "it takes a lot more than somebody saying that person did it" to bring charges was improper). Rather,

17

the prosecutor clarified that the bank did not bring criminal charges and that the witness himself did not stand to gain as a result of Trujillo's conviction. The People assert, and we agree, that the prosecutor's question merely elicited testimony to establish that the district attorney's office was responsible for pursuing the criminal charges against Trujillo.

¶ 43 Second, Trujillo asserts that the prosecutor impermissibly commented on his decision not to testify. We disagree. Even if we assume the comment on Trujillo's decision not to testify was improper, not every comment on a defendant's choice not to testify requires reversal. *See Martinez*, 652 P.2d at 177. "The determining factor is whether the defendant's silence was used by the prosecution as a means of creating an inference of guilt," *id.*, and we conclude that the prosecutor's comments here did not raise such an inference.

¶ 44 Finally, Trujillo contends that the prosecutor impermissibly denigrated defense counsel and the defense's theory of the case during rebuttal closing argument. We agree that the prosecutor improperly denigrated defense counsel and the defense's theory of

the case when he characterized her arguments as "completely ridiculous" and "preposterous."

¶ 45    However, we perceive no basis for reversal as a result of these improper remarks.  The comments were limited to the People's rebuttal closing argument.  Moreover, significant evidence corroborated the jury's finding of guilt — specifically, the undisputed evidence that Trujillo had removed an extensive amount of property from the house.  Viewing the record as a whole, we cannot say that there was a "reasonable probability" that the prosecutor's remarks denigrating defense counsel contributed to Trujillo's convictions.  *See Crider*, 186 P.3d at 42.  Thus, we determine the error was harmless.

¶ 46    In sum, though we agree that the prosecutor improperly denigrated defense counsel, we perceive no basis for reversal.

## V.  Indeterminate Probation

¶ 47    Trujillo contends that the trial court did not have the statutory authority to sentence him to indeterminate probation.  We disagree.

## A.  Additional Facts

¶ 48    During the sentencing hearing, the People requested that Trujillo be placed on a "long period of probation . . . somewhere in

19

the neighborhood of eight to ten years" because they anticipated that Trujillo would be ordered to pay substantial restitution.[2] Trujillo requested unsupervised probation with a collections investigator monitoring his restitution payments.

¶ 49 The trial court imposed an "indefinite probation sentence" because of the substantial restitution that Trujillo was expected to owe. In imposing an indeterminate probation sentence, the trial court stated, "There is case law that talks about whether [indeterminate probation] is something that can or should be imposed and it's certainly something that is allowed regardless of the type of conviction that has been entered."

¶ 50 The mittimus states that the sentence imposed was a term of probation for seven years to life.

B. Standard of Review

¶ 51 The People contend that we should not consider this claim because a sentence to probation is not ordinarily subject to

---

[2] The trial court ultimately ordered Trujillo to pay $171,421.97 in restitution. Trujillo separately appealed that order, and a division of this court affirmed in part, reversed in part, and remanded for reconsideration. *People v. Trujillo*, (Colo. App. No. 14CA2486, Oct. 5, 2017) (not published pursuant to C.A.R. 35(e)).

appellate review. However, "where, as here, a defendant contends that 'a court has exceeded its statutory authority' in imposing a probationary sentence, appellate review is warranted." *People v. Jenkins*, 2013 COA 76, ¶ 10, 305 P.3d 420, 423 (quoting *People v. Rossman*, 140 P.3d 172, 174 (Colo. App. 2006)).

¶ 52 "We review sentencing decisions that are within the statutory range for an abuse of discretion." *People v. Torrez*, 2013 COA 37, ¶ 71, 316 P.3d 25, 37. However, where the defendant contends that a court exceeded its statutory sentencing authority, our inquiry involves statutory interpretation. *Jenkins*, ¶ 12, 305 P.3d at 423. We review such issues of statutory interpretation de novo. *Id.*

## C. Applicable Law

¶ 53 Under section 18-1.3-202(1)(a), C.R.S. 2017, a trial court "may grant the defendant probation for such period and upon such terms and conditions as it deems best." Further, "[t]he length of probation shall be subject to the discretion of the court and may exceed the maximum period of incarceration authorized for the classification of the offense of which the defendant is convicted." *Id.*

¶ 54 In *Jenkins*, a division of this court concluded that section 18-1.3-202(1) "authorizes a trial court to impose an indeterminate term

of probation." *Jenkins*, ¶ 38, 305 P.3d at 426. The *Jenkins* division bolstered its conclusion by looking to the plain language of the statute — which the division noted "contemplate[s] both determinate and indeterminate terms of probation" — and to the provision's legislative history. *Id.* at ¶¶ 40, 42, 46, 305 P.3d at 426-28. Finally, the division noted that section 18-1.3-202(1) "generally pertains to a broad class of cases, and it simply *allows* a trial court to elect an indeterminate term if it sentences *an offender who has been convicted of a felony* to probation." *Id.* at ¶ 50, 305 P.3d at 428 (upholding probationary sentence of ten years to life); *see also People v. Martinez*, 844 P.2d 1203, 1206 (Colo. App. 1992) (concluding that a trial court has authority to impose a term of probation that exceeds the sentence to imprisonment in the statutory aggravated range for an offense).

### D. Analysis

¶ 55    Trujillo asserts that the trial court exceeded its statutory authority in imposing an indeterminate probationary sentence. We disagree.

¶ 56    Like the *Jenkins* division, we conclude that section 18-1.3-202(1) gives a trial court the authority to sentence a defendant

convicted of a felony to an indefinite probationary period. Trujillo urges that the statute limits a trial court's authority to impose an indeterminate probation sentence. Under Trujillo's logic, a sentence to probation for 100 years is permissible, but an indeterminate probation sentence is outside the trial court's statutory authority. The statute offers no basis for reaching this conclusion.

¶ 57    Trujillo asserts that *Jenkins* is distinguishable because that case concerned whether a defendant convicted of a sex offense not falling under the supervision scheme of the Colorado Sex Offender Lifetime Supervision Act of 1998 (SOLSA), *see* §§ 18-1.3-1001 to -1012, C.R.S. 2017, could nevertheless be sentenced to indeterminate probation. *Jenkins*, ¶ 1, 305 P.3d at 422. Trujillo contends that *Jenkins* was limited to the particular circumstances of that case, and does not widely apply to all offenses and defendants. However, the *Jenkins* division made clear that section 18-1.3-202(1) "establishes a general rule as far as the possibility of an indeterminate probationary term for felonies" and "authorizes a trial court to impose an indeterminate term of probation." *Id.* at ¶¶ 38, 50, 305 P.3d at 426, 428. In fact, *Jenkins* explicitly rejected the argument that a sentence of indeterminate probation could be

23

imposed only in sex offense cases subject to SOLSA. *Id.* at ¶¶ 49-50, 305 P.3d at 428. Thus, Trujillo's argument that *Jenkins* is limited to sex offenses is unavailing.

¶ 58    In sum, we conclude that the trial court did not exceed its statutory authority in imposing the probation sentence here.

## VI.  Costs of Prosecution

¶ 59    Trujillo next asserts that the trial court erred in awarding the full costs of prosecution requested by the People without making a finding on whether any portion of the costs was attributable to the charge on which he was acquitted. We agree.

### A.  Additional Facts

¶ 60    Before sentencing, the People moved for reimbursement of the costs of prosecution pursuant to section 18-1.3-701, C.R.S. 2017. The People requested $768.70. Trujillo opposed the motion on the basis that the People bore responsibility for the costs incurred to prove the defrauding a secured creditor charge, of which Trujillo was acquitted.

¶ 61    During the sentencing hearing, the trial court awarded the requested costs of prosecution, ordering Trujillo to pay $768.70.

## B. Standard of Review

¶ 62    The trial court, in its discretion, may assess reasonable and necessary costs of prosecution against a convicted defendant. *See* § 18-1.3-701(2)(j.5). Thus, we review an assessment of costs of prosecution for an abuse of discretion, reversing if the trial court's determination is manifestly arbitrary, unreasonable, or unfair, *People v. Palomo*, 272 P.3d 1106, 1110 (Colo. App. 2011), or if the trial court misapplied the law, *People v. Jefferson*, 2017 CO 35, ¶ 25, 393 P.3d 493, 499.

## C. Applicable Law

¶ 63    Under section 16-18-101(1), C.R.S. 2017, the state bears the costs of prosecution when a defendant is acquitted. Such costs may include witness fees, mileage, lodging expenses, transportation costs, and other reasonable and necessary costs that directly result from prosecuting the defendant. § 18-1.3-701(2); *see also People v. Sinovcic*, 2013 COA 38, ¶¶ 15-16, 304 P.3d 1176, 1179. If a defendant is convicted of fewer than all of the charged counts, the court may assess only those costs attributable to the counts for which the defendant was convicted, if an allocation is practicable. *Palomo*, 272 P.3d at 1112.

## D. Analysis

¶ 64 Trujillo asserts that the trial court erred in not making a finding as to whether some portion of the requested costs of prosecution were allocable to the acquitted charge. We agree.

¶ 65 As Trujillo concedes, it is possible that the costs cannot be allocated between the charge on which he was acquitted and the two charges on which he was convicted. However, the trial court did not find that such an allocation was impracticable. Because the trial court was required to consider whether some portion of the requested costs was practicably attributable to the acquitted charge, the trial court abused its discretion. *See DeBella v. People*, 233 P.3d 664, 667 (Colo. 2010) (failure to exercise discretion constitutes an abuse of the court's discretion).

¶ 66 Accordingly, we vacate the order awarding the People costs of prosecution and remand for the trial court to make appropriate findings of fact and "assess only those costs that are related to the prosecution of the . . . counts of which [Trujillo] was convicted, to the extent an allocation is practicable." *Palomo*, 272 P.3d at 1113.

## VII.  Amendment to Theft Statute

¶ 67     Trujillo contends that he should have benefited from an amendment to the theft statute reclassifying theft between $20,000 and $100,000 as a class 4 felony.  We agree.

### A.  Additional Facts

¶ 68     The General Assembly amended the theft statute on June 5, 2013.  *See* Ch. 373, sec. 1, § 18-4-401, 2013 Colo. Sess. Laws 2196.  Under the amended statute, theft between $20,000 and $100,000 constitutes a class 4 felony.  *See* § 18-4-401(2)(h), C.R.S. 2017.  Prior to the amendment, theft over $20,000 constituted a class 3 felony.  § 18-4-401(2)(d), C.R.S. 2011.

¶ 69     Trujillo was charged with theft of $20,000 or more in April 2011.  He was convicted in October 2013 and sentenced in December 2013.  His theft conviction was recorded on the mittimus as a class 3 felony.

### B.  Standard of Review

¶ 70     The People assert that, because Trujillo did not make this argument before the trial court, we should review only for plain error.  However, the division in *People v. Stellabotte* rejected this argument.  2016 COA 106, ¶ 42, ___ P.3d ___, ___ (noting that plain

27

error review was inappropriate because "a defendant may raise a claim at any time that his or her sentence was not authorized by law") (*cert. granted* Feb. 6, 2017). Following *Stellabotte*, we review the legality of the sentence de novo. *Id.* at ¶ 4, ___ P.3d at ___.

## C. Applicable Law

¶ 71    In determining whether to apply amendments to legislation, we first look to the plain language of the statute. *People v. Summers*, 208 P.3d 251, 253-54 (Colo. 2009). If a statute explicitly states that it applies only to offenses committed after the effective date, it must be applied accordingly. *See People v. McCoy*, 764 P.2d 1171, 1174 (Colo. 1988).

¶ 72    As a general rule, "[a] statute is presumed to be prospective in its operation." § 2-4-202, C.R.S. 2017. However, if a statute is silent as to whether it applies only prospectively, a defendant may seek retroactive application if he or she benefits from a significant change in the law. § 18-1-410(1)(f)(I), C.R.S. 2017; *see also People v. Thornton*, 187 Colo. 202, 203, 529 P.2d 628, 628 (1974) (allowing defendant to seek relief on direct appeal under statute).

¶ 73    In *Stellabotte*, a division of this court concluded that the amendatory theft legislation "applies retroactively to cases pending

28

in the trial court when the amendment was enacted." *Stellabotte,*
¶ 45, ___ P.3d at ___; *People v. Patton,* 2016 COA 187, ¶ 32, ___ P.3d
___, ___; *see also People v. Patton,* (Colo. App. No. 14CA2359, Aug.
11, 2016) (not published pursuant to C.A.R. 35(e)) (*cert. granted*
Feb. 6, 2017).

## D. Analysis

¶ 74    Trujillo contends that the amendment to the theft statute requires that we vacate his sentence and remand for the trial court to enter his theft conviction as a class 4 felony. We agree.

¶ 75    As the division noted in *Stellabotte*, the theft amendment does not explicitly state that it is either retroactive or prospective. *Stellabotte,* ¶ 45, ___ P.3d at ___. In the face of this legislative silence, the division held that a defendant who committed theft prior to the statutory amendment but was not convicted until after its passage was entitled to the benefit retroactively. *See id.* at ¶¶ 39, 45, ___ P.3d at ___. The same is true here.

¶ 76    Trujillo was charged with theft before the statute was amended, but was not convicted or sentenced until after the General Assembly lowered the classification for theft between

$20,000 and $100,000.[3]  Thus, like the defendant in *Stellabotte*,

Trujillo is entitled to the benefit of the amendment.  As a result, we

vacate the sentence for the theft conviction and remand for the

conviction to be entered as a class 4 felony.

¶ 77     The partial dissent looks to several statutory provisions in

support of its conclusion that Trujillo is not entitled to the benefit of

the amendatory legislation.  First, the partial dissent cites section

2-4-202, which states the general presumption that statutes apply

prospectively.  However, as the division noted in *Stellabotte*, section

18-1-410 is a specific exception to the general rule expressed in

section 2-4-202.  *Stellabotte*, ¶ 47 n.4, ___ P.3d at ___ n.4.  We

agree with that analysis.  Thus, the general presumption that

statutes apply prospectively does not apply here where Trujillo

seeks the benefit of a "significant change in the law, . . . allowing in

---

[3] Trujillo asserts that the theft was between $20,000 and $100,000 based on testimony from trial.  The People do not contest the value of the stolen property in this case.  We therefore assume that Trujillo's offense properly fell within the value range set forth in section 18-4-401(2)(h), C.R.S. 2017.

the interests of justice retroactive application of the changed legal standard."[4] § 18-1-410(1)(f)(I).

¶ 78    The partial dissent also invokes section 2-4-303, C.R.S. 2017, in support of its conclusion. Section 2-4-303 states:

> The repeal, revision, amendment, or consolidation of any statute or part of a statute or section or part of a section of any statute shall not have the effect to release, extinguish, alter, modify, or change in whole or in part any penalty, forfeiture, or liability, either civil or criminal, which shall have been incurred under such statute, unless the repealing, revising, amending, or consolidating act so expressly provides.

¶ 79    However, the supreme court has noted that the "general saving" provision codified in this statute is not applicable to criminal cases; instead, the court noted in dictum that it "has

---

[4] The partial dissent also asserts that section 18-1-410(1)(f)(I), C.R.S. 2017, does not provide any relief to Trujillo because that provision requires that "there has been significant change in the law, applied to the [defendant's] conviction or sentence." The partial dissent asserts that the phrase "applied to" requires that the legislation expressly state that it applies retroactively. We disagree with that interpretation, and believe that our view finds authority in supreme court case law. *See People v. Thomas*, 185 Colo. 395, 397, 525 P.2d 1136, 1137 (1974) (noting that "[t]he legislature intended the changed legal standards to apply wherever constitutionally permissible" but making no mention of whether the amendatory legislation reclassifying attempted second degree burglary explicitly stated that it applied retroactively).

consistently adhered to the principle . . . that a defendant is entitled to the benefits of amendatory legislation when relief is sought before finality has attached to the judgment of conviction." *Noe v. Dolan*, 197 Colo. 32, 36 n.3, 589 P.2d 483, 486 n.3 (1979).

¶ 80     In *People v. Boyd*, a division of the court of appeals concluded that section 2-4-303 did not prevent the retroactive effect of an amendatory constitutional provision. 2015 COA 109, ¶ 27, 395 P.3d 1128, 1134, *aff'd*, 2017 CO 2, 387 P.3d 755.[5] The division noted the supreme court's language in *Noe*. *Id.* at ¶ 28, 395 P.3d at 1134. To the extent that other supreme court cases included contrary statements, the *Boyd* division concluded that such statements were dicta and that the supreme court had not overruled or disapproved of either *Noe* or *People v. Thomas*, 185 Colo. 395, 398, 525 P.2d 1136, 1138 (1974) (holding that "amendatory legislation mitigating the penalties for crimes should be applied to any case which has not received final judgment").

_____

[5] The supreme court in *Boyd* affirmed the Court of Appeals decision on different grounds, concluding that the marijuana criminal offense statute had been rendered inoperative by Amendment 64. Neither the majority nor the dissent in *Boyd* cited section 2-4-303, C.R.S. 2017.

*Boyd*, ¶¶ 29-30, 395 P.3d at 1134-35.  Finally, the *Boyd* division concluded that section 18-1-410(1)(f)(I) controls over section 2-4-303 because the former sets forth a specific exception to the latter, which codifies a "*general* rule[] of construction regarding prospective effect for amendatory legislation."  *Id.* at ¶¶ 31-32, 395 P.3d at 1135.  We agree with the *Boyd* division's analysis and therefore do not perceive section 2-4-303 as a bar to the relief Trujillo seeks.

¶ 81    In making its statutory arguments, the partial dissent relies on the plain meaning of both section 2-4-303 and section 18-1-410(1)(f)(I).  However, as discussed, the supreme court has not given either provision its plain meaning.  Despite express reference in section 2-4-303 to civil and criminal penalties, the supreme court has indicated that the provision does not apply to criminal cases. *Noe*, 197 Colo. at 36 n.3, 589 P.2d at 486 n.3.  Similarly, while section 18-1-410(1)(f)(I) by its express terms applies to defendants seeking postconviction relief, the supreme court has held that the statute also extends to defendants seeking relief on direct appeal. *Thornton*, 187 Colo. at 203, 529 P.2d at 628.  In light of the

supreme court's interpretation of these statutes, we cannot give them the meanings that the partial dissent ascribes to them.

¶ 82    Finally, the partial dissent also relies on *Riley v. People*, in which the supreme court noted that it has "emphasized that a defendant is not entitled to the ameliorative effects of amendatory legislation if the General Assembly has not clearly indicated its intent to require such retroactive application." 828 P.2d 254, 258 (Colo. 1992). However, we do not consider this statement to have the controlling effect the partial dissent gives it. In *Riley*, the defendant committed a crime in April 1988 and sought relief under two sentencing provisions that expressly stated they applied to acts "committed on or after" July 1, 1988. *Id.* at 255-56. The *Riley* court held the defendant there was not entitled to relief because applying the statutes retroactively would require the court to ignore the "clear legislative determination" that the amended sentencing provisions would apply only to acts after that date. *Id.* at 257.

¶ 83    Thus, *Riley* is readily distinguishable from the present case, where the amendments to the theft statute do not expressly provide an effective date, and the language relied on by the partial dissent is dicta. *Accord McCoy*, 764 P.2d at 1174 (noting that, where

34

legislation expressly stated it applied to acts committed on or after its effective date, a "defendant does not receive any ameliorative benefit" because "retroactive application of the amendatory legislation is clearly not intended by its own terms"); *People v. Macias*, 631 P.2d 584, 587 (Colo. 1981) (same).

¶ 84    Thus, we conclude, in accordance with *Stellabotte*, that Trujillo should receive the benefit of the amendment to the theft statute reclassifying theft between $20,000 and $100,000 as a class 4 felony.  *See Stellabotte*, ¶ 40, ___ P.3d at ___.

## VIII.  Conclusion

¶ 85    Accordingly, the judgment of conviction is affirmed.  The sentence is affirmed in part and vacated in part, and the case is remanded for further proceedings consistent with the views expressed in this opinion.

JUDGE RICHMAN concurs.

JUDGE FURMAN concurs in part and dissents in part.

JUDGE FURMAN, concurring in part and dissenting in part.

¶ 86    I respectfully dissent from the majority's opinion only as to the effect of the 2013 amendments to the theft statute. I conclude that the 2013 amendments to the theft statute do not apply retroactively to Trujillo's case. I reach this conclusion for several reasons.

¶ 87    First, the General Assembly has made it clear that a "statute is presumed to be prospective in its operation." § 2-4-202, C.R.S. 2017. The 2013 amendments to the theft statute are silent as to whether they apply prospectively or retroactively. Therefore, I presume that the 2013 amendments are prospective in operation and do not apply to Trujillo's offense, which occurred before 2013. *See id.*

¶ 88    Second, an amendment to a criminal statute does not change the penalty for crimes already committed under the statute unless the amendatory legislation expressly provides for such a change. *See* § 2-4-303, C.R.S. 2017. Section 2-4-303 provides, in relevant part:

> The . . . amendment . . . of any statute or part
> of a statute . . . shall not have the effect to
> release, extinguish, alter, modify, or change in
> whole or in part any penalty, forfeiture, or
> liability, either civil or criminal, which shall

36

have been incurred under such statute, unless the . . . amending . . . act so expressly provides, and such statute or part of a statute . . . so . . . amended . . . shall be treated and held as still remaining in force for the purpose of sustaining any and all proper actions, suits, proceedings, and prosecutions, criminal as well as civil, for the enforcement of such penalty, forfeiture, or liability, as well as for the purpose of sustaining any judgment, decree, or order which can or may be rendered, entered, or made in such actions, suits, proceedings, or prosecutions imposing, inflicting, or declaring such penalty, forfeiture, or liability.

Because the 2013 amendments to the theft statute do not expressly provide that they apply retroactively, and Trujillo committed his crime before 2013, he is liable for theft as it was defined when he committed the offense. *See id.*

¶ 89     Third, in *Riley v. People*, 828 P.2d 254, 258 (Colo. 1992), our supreme court "emphasized that a defendant is not entitled to the ameliorative effects of amendatory legislation if the General Assembly has not clearly indicated its intent to require such retroactive application." *Id.* I consider this statement by the supreme court about its own jurisprudence on this issue to be controlling.

¶ 90     Fourth, section 18-1-410(1)(f)(I), C.R.S. 2017, does not allow

Trujillo, on direct appeal, to seek retroactive application of the 2013

amendments to his case.  Section 18-1-410(1)(f)(I) allows a

defendant to seek retroactive application of a "significant change in

the law, applied to" a defendant's "conviction or sentence."  I believe

that the phrase "applied to" reflects the General Assembly's intent

that, for amendatory legislation to apply retroactively to a

defendant's conviction or sentence, the legislation must state that it

applies retroactively.  Thus, because, as noted, the 2013

amendments do not state that they apply retroactively to Trujillo's

conviction and sentence, he may not seek retroactive application

under section 18-1-410(1)(f)(I).

¶ 91     Finally, and with all due respect, I decline to follow *People v.*

*Stellabotte*, 2016 COA 106 (*cert. granted* Feb. 6, 2017).  Indeed, I

agree with Judge Dailey's dissent in *Stellabotte*.  *See id.* at ¶¶ 62-70

(Dailey, J., concurring in part and dissenting in part).