22CA1684 Peo v Carpenter 04-24-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 22CA1684
Lincoln County District Court No. 20CR117
Honorable H. Clay Hurst, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Ricky C. Carpenter,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE GOMEZ
Fox and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 24, 2025

---

Philip J. Weiser, Attorney General, Claire V. Collins, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Robin Rheiner, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Ricky C. Carpenter, appeals the judgment of conviction entered on a jury verdict finding him guilty of first degree assault.  We affirm.

## I.    Background

¶ 2    At the time in question, Carpenter, an inmate at the Limon Correctional Facility, worked as a member of the facility's ground maintenance crew under the supervision of Sergeant Michael Crow (the victim).  The crew was responsible for mowing grass, shoveling snow, and other grounds upkeep.

¶ 3    One day, Carpenter and another inmate were working on an irrigation issue caused by a leak in the sprinkler system.  Carpenter and the other inmate, equipped with shovels, wrenches, and pliers, dug a hole three to four feet deep to access the leak.

¶ 4    As they worked, Carpenter informed the victim that he was getting a new job as a porter and would no longer be on the grounds crew.  Carpenter asked who his replacement would be, and, in response, the victim commented that it would be "somebody [as] old and crusty and nasty as" Carpenter.  According to the victim, Carpenter, taking offense to the comment, climbed out of the hole he was digging, made several angry remarks, and swung a

1

shovel at the victim's head. The victim said he deflected the shovel with his hand, stepped back, and tried to deploy his pepper spray. Next, the victim said, Carpenter picked up a pair of pliers and appeared ready to throw them, so the victim sprayed him with pepper spray. Carpenter then threw two sets of pliers toward the victim, neither of which reached the victim.

¶ 5 Shortly afterward, other officers responded and helped restrain Carpenter. The shovel was found in the hole. The victim reported that after the incident, he received medical attention for severe bruising and a bone chip to his hand.

¶ 6 The prosecution charged Carpenter with first degree assault under section 18-3-202(1)(f), C.R.S. 2024. As relevant here, that statute applies when someone, while lawfully confined as a result of a criminal conviction, threatens a person employed at a detention facility with a deadly weapon, with knowledge (or reason to know) the person is in the performance of their duties and with intent to cause that person serious bodily injury. *Id.* The prosecution also brought other charges that were dismissed before trial.

¶ 7 At trial, in addition to hearing the victim's testimony, the jury heard testimony from another officer on duty in the area who

2

witnessed part of the incident. That officer testified that she looked over when she heard screaming, and she saw two pairs of pliers fly toward the victim and saw the victim step back and spray his pepper spray. But, in contrast to the victim's testimony, she said that the person who threw the pliers was still in the hole. She also said that she didn't see anyone swing a shovel. Carpenter didn't testify at trial.

¶ 8 After the close of evidence, the jury convicted Carpenter of first degree assault.

## II. Admission of Evidence Regarding the Pliers

¶ 9 Carpenter first contends that the trial court erred by admitting evidence regarding the pliers because such evidence was irrelevant, and any potential probative value of the evidence was substantially outweighed by the danger of unfair prejudice. We disagree.

### A. Applicable Law and Standard of Review

¶ 10 The Colorado Rules of Evidence favor the admissibility of relevant evidence unless it is prohibited by the constitution, a statute, or a rule. *People v. Hood*, 2024 COA 27, ¶ 19; CRE 402. In criminal cases, evidence is relevant if, among other things, the evidence makes it more or less probable that the charged criminal

act occurred or that the defendant acted with the necessary criminal intent. *People v. Clark*, 2015 COA 44, ¶ 17; *see also* CRE 401. However, even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." CRE 403.

¶ 11     We review a trial court's evidentiary rulings for an abuse of discretion. *People v. Owens*, 2024 CO 10, ¶ 105. A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair or is based on an incorrect understanding of the law. *Id.*

## B.     Discussion

¶ 12     On the first day of trial, defense counsel asked the court to exclude all evidence regarding the pliers. Defense counsel argued that, because the complaint and information identified only the shovel as the deadly weapon to support the first degree assault charge, any evidence about the pliers was irrelevant. And, counsel continued, evidence about the pliers would be highly prejudicial and "could confuse and mislead the jury as to which dangerous instrument" was the deadly weapon at issue.

¶ 13    The prosecutor countered that Carpenter's throwing of the pliers was "part of the criminal episode" and was relevant to his state of mind, intent, and lack of mistake. The prosecutor also argued that, while evidence of the pliers was prejudicial because it was inculpatory, it wasn't unfairly prejudicial, and it was unlikely to confuse or mislead the jury. And, in response to questioning from the court, the prosecutor confirmed that he didn't plan to argue at trial that the pliers were deadly weapons.

¶ 14    The trial court ruled that it would admit evidence of the pliers. The court reasoned that such evidence was relevant and was not unfairly prejudicial because it related to the same episode and "was all part of the act" and because the prosecution wasn't going to argue that the pliers were deadly weapons.

¶ 15    We discern no abuse of discretion in the trial court's decision to admit evidence concerning the pliers. It was within the court's discretion to find such evidence relevant, given the allegation that Carpenter threw the pliers at the victim just after swinging the shovel at him. In particular, that evidence would make it more probable than not that Carpenter purposefully and intentionally threw the shovel at the victim, rather than, for instance,

accidentally dropping the shovel or throwing it at something or someone other than the victim. *See Clark*, ¶ 17; CRE 401.

¶ 16 Likewise, it was within the court's discretion to conclude that any risk of unfair prejudice or confusion of the issues didn't substantially outweigh the evidence's probative value. *See* CRE 403. The evidence was highly relevant to Carpenter's motive, intent, and lack of mistake in swinging the shovel. It wasn't particularly prejudicial, as the pliers (which didn't even reach the victim) were far less dangerous than the shovel (which the victim testified severely bruised and chipped a bone in his hand). *See People v. Brown*, 2014 COA 130M, ¶¶ 22, 27 (considering, in assessing a CRE 403 issue, the seriousness of the challenged evidence as compared with the charged conduct). And, as the trial court observed, it wasn't likely to cause confusion so long as the prosecution didn't suggest that the pliers were deadly weapons — and, as we discuss in the next section, the prosecution didn't.

¶ 17 Accordingly, we decline to disturb the trial court's ruling.

### III. Constructive Amendment

¶ 18 Carpenter next contends that, by allowing the presentation of the pliers evidence and denying his proposed jury instructions

limiting the deadly weapon to the shovel, the trial court impermissibly broadened the scope of what could be considered a deadly weapon, thereby constructively amending the charged offense. We are not persuaded.

### A. Applicable Law and Standard of Review

¶ 19 A charging document must be definite enough to give a defendant sufficient notice of the crime alleged so as to prepare a defense, and it must recite the essential facts of the crime to protect the defendant from further prosecution for the same offense. *People v. Pahl*, 169 P.3d 169, 177 (Colo. App. 2006).

¶ 20 A variance occurs when the charge in the charging document differs from the charge for which a defendant is convicted. *Campbell v. People*, 2020 CO 49, ¶ 45. Colorado courts recognize two types of variances: a constructive amendment and a simple variance. *People v. Rail*, 2016 COA 24, ¶ 49, *aff'd on other grounds,* 2019 CO 99, *and abrogated on other grounds by Bock v. People,* 2024 CO 61.

¶ 21 A constructive amendment occurs when a jury instruction changes an essential element of the charged offense, thereby altering the substance of the charging document. *Bock,* ¶ 14; *see*

7

*also People v. Gallegos*, 260 P.3d 15, 26 (Colo. App. 2010) (A constructive amendment effectively "subjects a defendant to the risk of conviction for an offense not originally charged.").

¶ 22    In contrast, a simple variance occurs when the evidence presented at trial proves facts that are materially different from those alleged in the charging document. *Campbell*, ¶ 45. A simple variance requires reversal of the judgment only if it prejudices the defendant's substantial rights. *Rail*, ¶ 51. Thus, we won't disturb the judgment for a simple variance "as long as the proof upon which the conviction is based corresponds to an offense that was clearly set out in the charging instrument." *Campbell*, ¶ 45.

¶ 23    We review de novo whether a constructive amendment or simple variance occurred. *People v. Martinez*, 2024 COA 34, ¶ 24; *People v. Baker*, 2019 COA 165, ¶ 27.

## B.   Additional Facts

¶ 24    The complaint and information alleged, in relevant part, that Carpenter, "with intent to cause serious bodily injury to [the victim] . . . unlawfully and feloniously threatened [the victim] *with a deadly weapon, namely: a shovel*." (Emphasis added.)

¶ 25    As noted above, on the first day of trial, defense counsel asked the court to exclude all evidence regarding the pliers.  Part of defense counsel's argument was that "the complaint . . . identif[ied] a shovel as the instrument in question" and didn't mention the pliers.  Thus, defense counsel argued, admitting evidence of the pliers would change or broaden the charge alleged in the complaint. The court admitted the evidence but confirmed that the prosecution wouldn't be arguing that the pliers were deadly weapons.

¶ 26    Later, defense counsel proposed two jury instructions aimed at specifying that the shovel was the deadly weapon in question.  First, defense counsel requested that the pattern elemental instruction for first degree assault be modified to require a finding that Carpenter "threatened [the victim] with a deadly weapon, namely, a shovel." Defense counsel also proposed the following language in a supplemental instruction:

> The Prosecution has alleged . . . that the deadly weapon used in this case is a shovel. As jurors, you must unanimously agree that the deadly weapon used in this case, if any, was a shovel.  There is no other object that may be considered as a deadly weapon in this case.

¶ 27    The court denied both proposed instructions.  It reasoned that the jury wasn't likely to be confused as to what was the deadly weapon at issue and that the proposed instructions would be more prejudicial to Carpenter insofar as they essentially declared that the shovel satisfied the standard to be deemed a deadly weapon.  The court accordingly provided the jury with the unaltered pattern instruction for first degree assault, which required a finding that Carpenter "threatened [the victim] with a deadly weapon."

### C.    Discussion

#### 1.    Constructive Amendment

¶ 28    Carpenter primarily argues that the broadening of the scope of what could be deemed a deadly weapon resulted in a constructive amendment of the first degree assault charge.  We disagree.

¶ 29    As an initial matter, we reject the People's assertion that Carpenter didn't adequately preserve this argument in the trial court.  Defense counsel raised the "sum and substance" of the argument, which was sufficient to preserve it for our review.  *People v. Cooley*, 2020 COA 101, ¶ 24 (quoting *In re Estate of Ramstetter*, 2016 COA 81, ¶ 68).

¶ 30     As indicated above, under section 18-3-202(1)(f), a person commits first degree assault if, while lawfully confined and with intent to cause serious bodily injury, they "threaten[] with a deadly weapon" a detention facility employee engaged in the performance of their duties, knowing or with reason to know that the employee was engaged in the performance of those duties. While the use of a deadly weapon is an essential element of the offense, there is nothing in the statute suggesting that the use of a *particular type* of deadly weapon is an essential element.

¶ 31     The pattern elemental instruction for first degree assault — which the jury was given — also requires only that a defendant "threatened [the victim] with a deadly weapon." COLJI-Crim. 3-2:06 (2024).

¶ 32     Although the prosecution alleged in the complaint and information that the type of deadly weapon used was a shovel, the additional detail of the *type* of weapon used was not part of the essential element. Thus, the trial court's decision to use an instruction without that detail didn't constitute a change in an essential element. *See People v. Rodriguez*, 914 P.2d 230, 272 n.44 (Colo. 1996) (an elemental instruction for first degree sexual assault

11

that didn't specify what deadly weapon the defendant used "did not unconstitutionally expand upon the offense charged," notwithstanding that the charging document had specified that the deadly weapon was a knife); *see also id.* at 258 (a definitional instruction for first degree sexual assault that included a list of actions that satisfy the sexual penetration element, only two of which were alleged in the charging document, "did not impermissibly amend the [charging document]" where the specific acts alleged in the charging document were merely "further evidentiary details which the [charging document] need not state"); *Pahl,* 169 P.3d at 178 (a definitional instruction for securities fraud that listed types of securities in addition to the one listed in the charging document didn't amount to a constructive amendment).

¶ 33   Because there was no change in an essential element of the offense between the complaint and information and the jury instructions, we reject Carpenter's argument that the instructions effectuated a constructive amendment.  *See Bock,* ¶ 14.  Similarly, we reject Carpenter's argument that the admission of the pliers evidence effectuated a constructive amendment, because it didn't alter an essential element of the offense or subject Carpenter "to the

12

risk of conviction for an offense not originally charged." *Gallegos*, 260 P.3d at 26.

¶ 34   Carpenter relies largely on *People v. Simmons*, 973 P.2d 627 (Colo. App. 1998), to support his contrary argument. But in that case, a division of this court concluded that there was no constructive amendment of the charging document. *Id.* at 629. Instead, the division's reversal of the judgment was based on a concern that the jury verdict may not have been unanimous — an issue Carpenter doesn't develop in this case. *Id.* at 630; *see also People v. Duran*, 2025 COA 34, ¶ 14 n.3 (appellate courts don't address undeveloped arguments). At any rate, the issue in that case concerned confusion over who was the *victim* of felony menacing, not simply what *instrument* was used to commit the crime. *See Simmons*, 973 P.2d at 629-30.

### 2. Simple Variance

¶ 35   To the extent that Carpenter also argues that the broadening of the scope of what could be deemed a deadly weapon resulted in an impermissible simple variance, we again disagree.

¶ 36   Consistent with the allegations in the complaint and information, the evidence presented at trial indicated that

Carpenter swung a shovel toward the victim's head, injuring the victim's hand when he deflected it. Further evidence established that the shovel was made of metal and wood, was roughly three feet long, and weighed ten to fifteen pounds.

¶ 37 While the prosecution presented evidence that Carpenter also threw two sets of pliers during the incident, the parties made clear at trial that the conduct at issue was the swinging of the shovel, that the shovel was the alleged deadly weapon, and that the actions with the pliers were merely an indication of Carpenter's intent. For instance, in opening statements, after briefly describing the incident and mentioning the shovel and the pliers, the prosecutor explained that "the charge [wa]s about swinging a shovel, which can cause serious bodily injury." Then again, in closing argument, the prosecutor told the jurors that they were being asked whether it constitutes "intent . . . to cause serious bodily injury" "when you swing" a "shovel [that is] three feet long, estimated ten to fifteen pounds[, and] made of metal . . . at a person's head." He also argued that "a shovel . . . could be a deadly weapon" and that "the pliers . . . are a continuation of [Carpenter's] acts . . . as part of intent." Likewise, defense counsel explained in closing argument,

Now, we talked about a couple tools here. And based on the statements of [the victim], he was concerned about a shovel. There's also mention about these pliers that happened after, but he's not concerned with those. Those are not the basis of his concern as he testified to. We're talking about allegations of a shovel being swung. That is the alleged threat to have occurred, to have occurred to have hit him.

Thus, it is not reasonably likely that the jurors could've been confused about what instrument was the deadly weapon.

¶ 38   We reject Carpenter's suggestion that the jury was likely confused or misled by the prosecutor's statement in closing argument that a deadly weapon "does not need to actually make contact" to establish the elements of the offense. The prosecutor made no reference to the pliers in conjunction with that statement, and he went on to explain that no actual serious bodily injury was required — only the intent to cause it. These statements can fairly be interpreted as telling the jurors they could convict Carpenter even if they disagreed about where the shovel was swung, whether it struck the victim, and whether it caused an injury. Indeed, defense counsel contested those very facts in his closing argument, and there were discrepancies in the evidence as to whether

15

Carpenter was outside the hole or inside the hole at the time (as the victim said Carpenter swung the shovel after climbing out of the hole, yet the shovel was later found inside the hole and the other officer reported seeing Carpenter inside the hole).

¶ 39 Accordingly, we conclude that the evidence presented at trial did not prove facts materially different from those alleged in the complaint and information and, therefore, that no simple variance occurred. *See Campbell*, ¶ 45.

¶ 40 Yet even if there was a simple variance, it isn't grounds for reversal, as Carpenter "does not complain he was unaware of the essential facts in support of the [first degree assault charge]," "does not argue he would have challenged the prosecution's case differently," and does not "indicate he could have produced different evidence in his defense." *Pahl*, 169 P.3d at 178; *see also Rail*, ¶ 51; *Campbell*, ¶ 45. Indeed, the complaint and information and the

evidence at trial "concerned the same incident of assault, the same defendant, [and the same] victim." *Rodriguez*, 914 P.2d at 258.[1]

## IV. Prosecutorial Misconduct

¶ 41 Lastly, Carpenter contends that the prosecutor committed reversible misconduct by commenting in his rebuttal closing argument on Carpenter's decision not to testify at trial and by shifting the burden of proof to the defense. Carpenter concedes this issue is unpreserved, and we conclude that any error in allowing the prosecution's comments doesn't rise to the level of plain error.

### A. Applicable Law and Standard of Review

¶ 42 We use a two-step analysis when reviewing a claim of prosecutorial misconduct. *People v. Trujillo*, 2018 COA 12, ¶ 36. First, we determine whether the prosecutor's conduct was improper under the totality of the circumstances. *Id.* And second, we

---

[1] To the extent that Carpenter also argues that the court abused its discretion by denying his proposed jury instructions, we disagree for similar reasons and because the elemental instruction correctly stated the law. *See People v. Trujillo*, 2018 COA 12, ¶ 11 ("[W]e review a trial court's decision concerning a proposed jury instruction for an abuse of discretion and will not disturb the ruling unless it is manifestly arbitrary, unreasonable, or unfair.").

17

determine whether any prosecutorial misconduct warrants reversal under the applicable standard of review. *Id.*

¶ 43 A prosecutor is allowed considerable latitude in responding to arguments made by opposing counsel. *People v. Ramirez*, 997 P.2d 1200, 1211 (Colo. App. 1999), *aff'd on other grounds*, 43 P.3d 611 (Colo. 2001).

¶ 44 However, a prosecutor should not refer to a defendant's exercise of the constitutional right to remain silent or suggest that the defendant's silence creates an inference of guilt. *Trujillo*, ¶¶ 38, 43. "The test for whether a prosecutor's argument constitutes a comment on the defendant's failure to testify is whether the comment directs the jury's attention to the defendant's silence as a means of implying guilt." *People v. Gibson*, 203 P.3d 571, 577 (Colo. App. 2008).

¶ 45 A prosecutor also may not attempt to shift the burden of proof to the defendant. *People v. Marko*, 2015 COA 139, ¶ 225, *aff'd on other grounds*, 2018 CO 97. A prosecutor may, however, comment on the lack of evidence supporting a defense theory. *People v. Walker*, 2022 COA 15, ¶ 41. We assess whether a prosecutor's comments improperly shifted the burden of proof by considering

(1) whether the prosecutor specifically argued or intended to establish that the defendant carried the burden of proof; (2) whether the prosecutor's actions constituted a fair response to defense counsel's questioning and comments; and (3) whether the jury was informed by counsel and the court about the defendant's presumption of innocence and the prosecution's burden of proof. *People v. Duncan*, 2023 COA 122, ¶ 32.

¶ 46　Where, as here, the defense doesn't object to the alleged misconduct, we review for plain error. *People v. Rhea*, 2014 COA 60, ¶ 43. Plain error is an error that is obvious and substantial. *Hagos v. People*, 2012 CO 63, ¶ 14. An error is obvious if it contravened a clear statutory command, a well-settled legal principle, or Colorado case law. *People v. Thompson*, 2018 COA 83, ¶ 34, *aff'd*, 2020 CO 72. An error is substantial if it "so undermined the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment of conviction." *Hagos*, ¶ 14 (quoting *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005)). "Only prosecutorial misconduct which is 'flagrantly, glaringly, or tremendously improper' warrants reversal." *Domingo-Gomez v. People*, 125 P.3d 1043, 1053 (Colo. 2005) (quoting *People*

*v. Avila*, 944 P.2d 673, 676 (Colo. App. 1997)). "Prosecutorial misconduct in closing argument is rarely so egregious as to constitute plain error." *People v. Villa*, 240 P.3d 343, 356 (Colo. App. 2009).

## B.  Discussion

¶ 47  In his rebuttal closing argument, the prosecutor stated,

> The burden of the People, myself as the prosecutor on behalf of the People, is to prove the elements of the charges beyond a reasonable doubt.  Not disprove a theory, not disprove the potential capabilities of a *person who nobody's heard from*, and who doesn't have to say a word.  He doesn't have to say anything.  You don't have to consider it at all.
>
> Here's the thing: You have to *imagine* his capabilities.  You have to *speculate* about his capabilities to *buy this argument wholesale.* You have to decide if [the victim] misled everyone all the way up to getting on this stand, or you have to decide what the evidence told you.

(Emphases added.)

¶ 48  It's unclear what the prosecutor meant by his reference to no one having heard from Carpenter, and whether he was attempting to suggest that it signified Carpenter's guilt.  In the portion of his rebuttal immediately preceding the challenged comments, the

20

prosecutor referred to defense counsel's statement in closing argument that if Carpenter had actually intended to cause serious bodily injury, he would've swung the shovel harder and multiple times. But that portion of the rebuttal also referred to several other things, including the lack of any need to establish an injury. In any event, the prosecutor should not have referred to Carpenter's silence, and we disagree with the People's assertion that the reference was a fair response to defense counsel's closing argument. *See Duncan*, ¶ 32.

¶ 49    Nonetheless, we conclude that any error in allowing the comments was not so obvious or substantial as to amount to plain error. As we've indicated, the reference to Carpenter's silence was vague and unclear and didn't directly suggest that it signified guilt. *See Gibson*, 203 P.3d at 577. Likewise, it's not clear that the prosecutor was trying to shift the burden of proof to Carpenter, as opposed to commenting on the lack of evidence to support Carpenter's theory of the case. *See Marko*, ¶ 225; *Walker*, ¶ 41. The prosecutor also bookended his very brief comments with reminders to the jury that the prosecution bore the burden of proof and that Carpenter had the right not to testify. The court, too,

21

instructed the jury on the prosecution's burden of proof, Carpenter's constitutional right not to testify, and the fact that the jury could not use his decision not to testify as an inference of guilt. *See Duncan,* ¶ 32.

¶ 50     Accordingly, we discern no plain error. *See Domingo-Gomez,* 125 P.3d at 1053; *Villa,* 240 P.3d at 356; *see also People v. Cuellar,* 2023 COA 20, ¶¶ 51-54 (similar comments didn't amount to plain error); *People v. Cevallos-Acosta,* 140 P.3d 116, 124 (Colo. App. 2005) (same).

## V.     Disposition

¶ 51     The judgment is affirmed.

JUDGE FOX and JUDGE LUM concur.